JOHN SULLIVAN *vs.* THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

Hartford Dist., May T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and J. M. HALL, Js.

| 62 | 209 |
| 74 | 346 |
| 74 | 390 |
| 62 | 209 |
| 75 | 386 |
| 62 | 209 |
| 77 | 103 |

*B* was the foreman of a gang of railroad laborers, and as such it was his duty to take the oversight of and to handle dynamite cartridges used in blasting rocks for the repair of the road. As foreman he received a higher compensation than the rest of the gang. In preparing a cartridge for use he negligently allowed it to explode, causing a serious injury to one of the workmen. The court below found that the railroad company was not guilty of negligence in employing *B* as a competent person for the duty, and that he was a fellow-servant with the rest of the gang. Held that there was nothing in the facts found which enabled the court to see, as a matter of law, that the court below erred in its conclusion upon either point.

There was nothing in the mere fact that *B* was foreman of the gang to prevent the relation of fellow-servant existing between himself and the other laborers.

Laborers have been frequently held to be fellow-servants where they have the same employer, are engaged in the accomplishment of the same general object, are acting in one common service, and derive their compensation from the same source.

If the particular act done is one that the law implies a contract duty of the employer to perform, so that the person performing it is a vice-principal as to that act, then he is not a fellow-servant with the other laborers.

The fact that *B* was negligent in respect to the particular act which caused the injury did not necessarily show that he was not competent to properly perform the work for which he was employed.

[Argued May 3d—decided September 12th, 1892.]

VOL. LXII.—14

ACTION to recover damages for an injury sustained through the negligence of the defendant railroad company; brought to the Superior Court in Windham County.

The plaintiff alleged in his complaint that on or about February 6th, 1891, he was in the employ of the railroad company as a laborer and workman; that while employed in the line of his duty, and without any negligence on his part, the defendant negligently and carelessly brought a large quantity of dynamite into the building where the plaintiff in the course of his employment and the line of his duty rightfully and without negligence was, and negligently and carelessly placed said dynamite on a forge in said building, and so negligently and carelessly handled, placed and cared for said dynamite that it exploded by reason thereof with great force and violence; all of which acts were done by the defendant without any negligence on the part of the plaintiff. Another paragraph states the injury to the plaintiff from the explosion.

The case was defaulted, and, upon a hearing in damages before *F. B. Hall, J.,* nominal damages were awarded to the plaintiff, whereupon he appealed to this court. The court made the following finding of facts.

The defendant, on the 6th day of February, 1891, and for a long time prior thereto, was and still is a corporation operating a line of railway passing through the town of Middlefield in this state, the place of the accident. The labor of maintaining the road-bed and keeping it in repair is done by companies usually called " gangs" of laborers, one of whom is a foreman. In the absence of the road-master such foreman directs the work of the other laborers of the gang. He keeps the time of the men of his gang, but has no power to hire or discharge men. Such foreman works as a laborer with the men of his gang. He receives two dollars and a half per day, while the other laborers receive one dollar and a half. Their work is done under the immediate direction of the road-master, who inspects and oversees the track and embankment of the whole division, (in this case the Air Line division,) and whose duty it is to see that it is

kept in repair, under the general direction and control of the division superintendent, who appoints him, and to whom he reports. The division superintendent makes report to the general manager. The executive officers, the general manager, and division superintendents, are all appointed by the board of directors. On said February 6th the plaintiff was in the employ of the defendant as an ordinary laborer or track-hand, and belonged to the gang of laborers, consisting of five or six men, of which one Barber was foreman. The gang were at this time engaged in blasting to protect the safety of the track, which work they had been ordered to perform by the road-master of the Air Line division of the defendant's road. One "Jack" Sullivan, so. called during the trial to distinguish him from the plaintiff, was a member of the gang. The plaintiff's duties were the ordinary duties of a track-hand. On said 6th day of February this gang of men were engaged in drilling rocks at Middlefield, preparatory to cutting down a ledge overhanging the track. The drilling was preparatory to blasting the rock with dynamite. Barber, under the instructions of the road-master, had procured from one Willis, another foreman in the employ of the defendant, a day or two before, a box of dynamite cartridges, and had placed them by the side of a small building about nine feet square, the property of the defendant, used by the defendant as a blacksmith shop, and in which one of the gang worked as a blacksmith and sharpened tools, on a forge about two feet in diameter, which stood in the small building. The morning of February 6th was rainy and cold and the dynamite had become frozen. At about 11 o'clock of that morning Barber took four cartridges of dynamite from the box, carried them into the shanty, as the small building was called, and placed them on the edge of the forge near the fire, for the purpose of thawing the dynamite. Barber allowed the cartridges of dynamite to remain on the edge of the forge near the fire, holding them one at a time over the coals, until in his opinion they were sufficiently thawed, and then, replacing three of them on the edge of the forge, he carried the fourth to·

the place where the plaintiff and others were drilling in the rock, a distance of about one eighth of a mile, and handed it to Jack Sullivan to be loaded by him.   This is done by inserting into one end of the cartridge a fuse, to the end of which a percussion cap is attached.   The end of the envelope inclosing the cartridge is then firmly tied around the fuse with a piece of twine, and the cartridge is then ready to be dropped into the hole prepared for it in the rock which is to be blasted.   The cartridge having been loaded and prepared by Jack Sullivan, Barber decided that the cartridge should not be exploded until after a train then due had passed, and so informed Jack Sullivan.   The latter, thereupon, jerked the fuse out of the cartridge, and handed the fuse and cartridge to Barber, who immediately returned the fuse to Sullivan.   Sullivan thereupon carried it to the shanty, and hung it up within the building.   Though no witness could testify whether or not, in so removing the fuse from the cartridge, the cap became detached from the fuse and remained in the cartridge, yet from the fact that the cap was but slightly fastened to the end of the fuse by pressing the sides of the cap upon the fuse with a knife, from the manner in which the fuse was removed from the tied end of the cartridge, and in the absence of evidence of any other cause of the explosion which followed, I am of the opinion that the percussion cap was detached from the fuse by Jack Sullivan in so removing the fuse from the cartridge, and that the cap remaining in the cartridge when the cartridge was replaced upon the forge was exploded by the heat from the fire in the forge, and so exploded the cartridge.   After the fuse was so removed, neither Jack Sullivan nor Barber examined to see if the cap had been removed.   Barber thereupon took the cartridge and placed it on the forge near the fire as before, with the three other cartridges.   Shortly afterwards, while the plaintiff and Barber, and others of the gang of workmen, were at dinner in the shanty, and while no one was touching either the forge or the cartridge, the dynamite exploded, and injured all the gang of laborers, including Barber and the plaintiff.   By the explosion and injury the

plaintiff was rendered totally and permanently blind. The plaintiff knew, when he entered the shanty to eat his dinner, that the cartridges were lying on the edge of the forge. The defendant used due care in procuring dynamite, and there was no reason to suppose that the dynamite in question had any latent or inherent defect which due care on the part of the defendant would have discovered. The method adopted by Barber of thawing dynamite cartridges is one commonly employed. The evidence showed that heat so applied to a dynamite cartridge which does not contain a percussion cap will not explode it. Unless the cartridge so replaced upon the forge contained a percussion cap, the explosion of which from the heat of the forge caused the explosion of dynamite, I am unable from the evidence to find the cause of the explosion. I find that the explosion and injury to the plaintiff were not caused by any negligence of the defendant. I find that Jack Sullivan was guilty of negligence in removing the fuse from the cartridge in such a manner that the cap might become detached from the fuse and remain in the cartridge. I find that both Jack Sullivan and Barber were negligent in not having examined either the fuse or the cartridge to see if the cap had been removed from the cartridge, as they both knew that the fuse had been so removed from the cartridge in an improper way, and both fully understood the danger of placing near the fire a dynamite cartridge containing a percussion cap. I find that both Barber and Jack Sullivan were competent persons to properly perform the work for which they were engaged, and in which they were employed, and the defendant was guilty of no negligence in having employed them.

Upon these facts the defendant claimed, and asked the court to hold, that the relation of the plaintiff to Barber, and to Jack Sullivan, was that of a fellow employee with them of the defendant, and that for the injuries sustained by the plaintiff, upon all the facts found the defendants were not liable in law in this action, beyond the amount of nominal damages. The court sustained the claim of the defend-

ant, and rendered judgment for the plaintiff for nominal damages only. The plaintiff appealed to this court.

*W. A. King* and *J. T. Lynch*, for the appellants.

*H. C. Robinson* and *C. E. Searls*, for the appellee.

SEYMOUR, J.   A considerable number of reasons of appeal were filed in this case, but the questions really made are few, and do not require a recital of the reasons in detail.

It will tend to simplify matters if we first consider the question whether the relation between the plaintiff and Barber, as disclosed by the record, was that of fellow-servants. The plaintiff claims that it was not, and bases one ground of appeal on that claim.

Barber, as the finding states, was foreman of a gang of five or six laborers, of whom the plaintiff was one. They were engaged in drilling and blasting to protect the safety of the defendant's railroad track. In the absence of the road-master it was the duty of the foreman to direct the work of the other laborers, and to keep their time, but he had no power to hire or discharge them. At the time of the accident the road-master was absent and Barber was directing the work.

There is nothing, of course, in the mere fact that Barber was foreman, to prevent the relation of fellow-servants from subsisting between him and the plaintiff. Those have frequently been held to be fellow-servants, within the meaning of the law affecting the responsibility of masters for their negligence, who have the same employer, are engaged in the accomplishment of the same general object, are acting in one common service, and derive their compensation from the same source.

This court said very recently in *McElligott* v. *Randolph*, 61 Conn., 157, that the question of the master's responsibility in case of an injury is determined, " not by the rank or grade of the offending servant, but by the character of the particular act or omission to which the injury is attribut-

able." And it may be added as bearing upon the case at bar, that if it is an act that the law implies a contract duty upon the part of the employer to perform, so that the person performing it. is acting as vice-principal *quoad* that particular act, then the latter is not a fellow-servant of his fellow-laborers.

In this case the work of preparing the dynamite, caring for it after it was prepared, distributing it, directing when and how it should be exploded—in short, the sort of work which the finding states that Barber was doing at and about the time of the accident, is clearly not the work or duty of the master, but some of the details necessarily resting upon the intelligence and care of the servants to whom that duty is entrusted, the risk of which the plaintiff had assumed.

Upon the facts found we cannot hold that the court erred in deciding that Barber and the plaintiff were, for the purposes of this case, fellow-servants.

The perils arising from the carelessness and negligence of fellow-servants are among the risks which one who engages in the employment of another for the performance of specified services for compensation takes upon himself.

It is the master's duty to exercise reasonable care to provide for his servants a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work, and fit and competent persons as his co-laborers. The trial court finds that " the injury to the plaintiff was not caused by any negligence of the defendant," and " that both Barber and Jack Sullivan were competent persons to properly perform the work for which they were engaged and for which they were employed, and the defendant was guilty of no negligence in having employed them." The plaintiff complains of this, and asks us to find, as matter of law upon the facts contained in the finding, that it is error.

When it is claimed that a master has been guilty of negligence in selecting or retaining an incompetent servant, the burden is on the plaintiff to prove it. The fact that the court finds that both Jack Sullivan and Barber were negligent in respect to this particular accident, in not having ex-

amined either the fuse or the cartridge, does not necessarily show that they were not competent persons to properly perform the work for which they were employed, nor, *a fortiori*, that the defendant was guilty of negligence in having employed them. *Baulec* v. *N. York & Harlem R. R. Co.*, 59 N. York, 356. It nowhere appears that any other evidence tending to show incompetency was offered. We are in no position, therefore, upon the facts, to contradict the finding of the court in respect to the competency of the plaintiff's fellow-servants, and the defendant's freedom from negligence in employing them.

In respect to the point that the court erred in finding, upon the facts stated, " that said explosion and injury were not caused by any negligence of the defendant," the plaintiff insists that the finding shows that the defendant did not furnish suitable tools and appliances, because it shows " that the cap was but slightly fastened to the end of the fuse by pressing the sides of the cap upon the fuse with a knife, and nowhere finds that any tool other than a knife, adapted to securely fasten the cap to the fuse, was furnished by the defendant."

It may be said, in reply to this, that there is no allegation in the complaint that the defendant was negligent in not furnishing proper tools and appliances; that no such claim was made at the trial ; that it nowhere appears that a knife was not a proper and usual tool for the purpose for which it was used, or that any other tool could have been procured or is made which is better adapted for the purpose ; or that, if any other and more fit tool exists, it was not furnished by the defendant. The finding is silent on these points. It only incidentally appears that the cap was but slightly fastened by pressing it with a knife. Whether there would have been any difficulty in pressing it securely with a knife is not stated. In short nothing appears of record to warrant us in contradicting the finding of the court below, that the explosion and injury were not caused by any negligence of the defendant.

Upon the plaintiff's own contention that we are at liberty

to review this conclusion, we find no ground, in the facts as detailed, upon which to base a disagreement with the court below. There is, however, nothing in the case to authorize us to treat the question of the defendant's negligence, as presented to us, as a question of law.

The plaintiff himself insists that the question of contributory negligence, if it arose in the case, was disposed of at the trial as a question of fact and cannot be reviewed by this court. He makes the same claim in respect to the finding of the negligence of Jack Sullivan and Barber. But he claims that the finding that the defendant was not negligent is not conclusive. We cannot see that the court adopted any erroneous views as to the duty which the law imposed upon the defendant respecting either the employment of competent fellow-servants or the care to be exercised to provide them with reasonably safe appliances and instrumentalities for their work, having regard to the character of the work and the instrumentalities with which it was to be accomplished. There is nothing to indicate that it disregarded any claim which the plaintiff made in that behalf.

It will be apparent upon a careful examination of it, that there is nothing in the record which would justify us in holding that the trial court erred, as matter of law, in deciding that the defendant was free from negligence, or in impeaching the soundness of its disposition of the facts upon which such ultimate decision rested.

The standard fixed by law is, as already stated, that the master shall exercise reasonable care to employ competent servants, and provide reasonably safe appliances for the work to be done. Unless he observes this standard he is negligent. In deciding whether the standard has been observed, the competency of the co-servants and the safety of the appliances are questions to be decided by the trial court upon the evidence offered upon those points. If in this case the plaintiff offered evidence attacking the competency of his fellow-servants or the suitableness of the appliances furnished them, it is not before us, and should not be.

To conclude the matter, there is nothing in the case to

warrant us in holding that the court did not correctly understand and apply the law; that it did not receive and consider all the evidence that was offered.; that it imposed any duty upon the parties which the law did not impose or absolved them from any duty which the law required of them under the circumstances; or that in any other respect it violated any rule or principle of law.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.