BIANCA RINCICOTTI, ADMINISTRATRIX, *vs.* JOHN J. O'BRIEN CONTRACTING COMPANY.

Third Judicial District, New Haven, January Term, 1905.
BALDWIN, HAMERSLEY, HALL, PRENTICE and SHUMWAY, Js.

The duty of a master to use reasonable care to provide his servants with reasonably safe mechanical appliances for the work required of them, includes an obligation upon his part to exercise a like degree of care in keeping such appliances in a safe condition.

The master's duty may be performed in person or by one delegated therefor, but in either event the thing required of the master must be done: delegation to a fit and competent agent is not enough.

The plaintiff's intestate, a mason, was killed by the fall of a hoisting derrick, which was caused by the parting of one of several wire cables used to support the mast. The cable had been spliced, and because of wear and tear at that point was unable to withstand the strain, a defect which inspection by the defendant's superintendent, who made the splice, would have revealed. *Held* that the failure to inspect, rather than the superintendent's failure to use "thimbles" in making the splice, was the proximate cause of the parting of the cable and the fall of the derrick.

The admission of remote testimony can rarely be a sufficient reason for granting a new trial.

Argued January 24th—decided March 9th, 1905.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to and heard

in damages by the Superior Court in Fairfield County, *Elmer, J. ;* facts found and judgment rendered for the plaintiff for $5,000, and appeal by the defendant. *No error.*

The defendant was engaged in building a stone retaining-wall along the Naugatuck River in Ansonia. One Toole, was the superintendent of the work and had charge thereof and of the men employed upon it. The plaintiff's intestate was a mason so employed and foreman of the masons. For the prosecution of the work the defendant used a heavy steam hoisting derrick having a mast fifty feet in height and a boom fifty-eight feet long operated by what is known as a bull wheel. By its use the defendant was enabled to lift the heavy blocks of stone of which the wall was constructed from the cars and swing them into position upon the wall. The derrick rested upon a foundation prepared for it, and was supported in its upright position by twisted wire cables which radiated in various directions from the top of the mast to secure-points where they were fastened. As the construction of the wall progressed so far that the boom would no longer serve at the point where stones were desired to be placed, the derrick was moved and relocated. Work upon the wall had been in process for some time when the intestate received his injuries, and two such relocations had been made.

Toole was an expert derrick-rigger and it was a part of his duty, and his duty alone, to take care and charge of the derrick, including its locations, removals, and preparation for use. The masons had no duty in that regard.

At the time of the last location of the derrick, which, like the others, was made under Toole's direction and about one month prior to the accident, it was supported in position by six cables, varying from one hundred and eighty-six to four hundred and thirteen feet in length. One of them was three hundred and sixty feet in length and extended from the mast head across the river where it was made fast to a tree. Owing to the distance which this cable had in the former locations of the derrick been required to span, Toole had

spliced it. The new conditions necessitated the same extension, and the spliced cable was used, the point of splicing being about fifteen or twenty feet from the tree and across the river. The splice was made by doubling back the end of each piece of the cable, inserting one of the loops thus formed into the other, and fastening each end thus doubled back to the cable by iron clamps of approved design. Interlocked loops were thus made. As the result of the use of the derrick after the splicing, and the constant strain and friction at the points of contact within the loops, these parts of the cable had, before the accident, become chafed and worn and some of the strands had parted.

At the time of the accident the derrick was being used to carry a stone into position. When the stone was in midair, said cable parted at the worn and weakened part within one of the loops. As a result the derrick fell, striking the intestate.

Toole never at any time inspected the cable to ascertain its condition.

In making cable splicings such as have been described, it is customary and prudent to place a device called a thimble in each of the loops in such a manner as to furnish the bearing in both directions. By the use of the thimbles the cables are prevented from bending as sharply as they otherwise would, the tension is distributed, and the friction and chafing obviated. Added strength and durability are thus obtained.

There were suitable thimbles, furnished by the defendant in a chest upon or near the premises, which fact was known to Toole.

*Seymour C. Loomis* and *Earnest C. Simpson*, for the appellant (defendant).

*Stiles Judson, Jr.*, and *John J. Cullinan*, for the appellee (plaintiff).

PRENTICE, J. The plaintiff's intestate while acting as the defendant's servant received injuries from which he died, by

reason of the fall of an instrumentality used in the work upon which he was employed. The injuries were not occasioned by any negligence in the use of the instrumentality. The instrumentality was not one whose construction, preparation, adaptation for use, care or inspection, entered into the performance of the intestate's work or duty, nor was it an incident of it. *Fraser* v. *Red River Lumber Co.*, 45 Minn. 235; *Burns* v. *Sennett & Miller*, 99 Cal. 363; *Robinson* v. *Blake Mfg. Co.*, 143 Mass. 528; *Richards* v. *Hayes*, 45 N. Y. Supp. 234; 2 Labatt on Master & Servant, § 589. It was a mechanical apparatus furnished by the master to co-operate with and facilitate the intestate and his fellow masons in the work upon which they were engaged. The duty of the defendant as master under such circumstances and in respect to such an instrumentality was to use reasonable care to provide one which should be reasonably safe for the work to which it was to be put. *McElligott* v. *Randolph*, 61 Conn. 157; *Gerrish* v. *New Haven Ice Co.*, 63 id. 9, 16. This duty was a continuing one, and included that of maintenance. *Hough* v. *Railway Co.*, 100 U. S. 213; *Shanny* v. *Androscoggin Mills*, 66 Me. 420; *Ford* v. *Fitchburg R. Co.*, 110 Mass. 240; *Tierney* v. *Minneapolis & St. L. Ry. Co.*, 33 Minn. 311; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Moore* v. *Wabash, St. L. & P. Ry. Co.*, 85 Mo. 588; *Bailey* v. *Rome, W. & O. R. Co.* 139 N. Y. 302. The duty of maintenance necessarily involved that of reasonable inspection and repair. *Union Pacific Ry. Co.* v. *Daniels*, 152 U. S. 634; *Tierney* v. *Minneapolis & St. L. Ry. Co.*, 33 Minn. 311; *Armour* v. *Brazeau*, 191 Ill. 117; *Comben* v. *Belleville Stone Co.*, 59 N. J. L. 226; *Munch* v. *Great Northern Ry. Co.*, 75 Minn. 61; *Louisville E. & St. L. C. R. Co.* v. *Utz*, 133 Ind. 265; *Richmond & D. R. Co.* v. *Burnett*, 88 Va. 538.

The defendant says that the cause of the accident was the failure to insert thimbles in the loops made in splicing the cable, and argues therefrom that as their absence was due to the failure of Toole, the superintendent, to insert them, and as the defendant had provided sufficient thimbles to be used when needed, it had not failed in its duty as master, and

the intestate's injuries were the consequence of the negligence of Toole in respect to his service as the intestate's fellow-servant.

This contention is unsound in both its premise and the conclusions drawn therefrom.  It is enough for our present purpose to pursue at length the first of these dual propositions.  In thus limiting our discussion, however, we do not wish our silence to imply our assent to the legal principle which, in so far at least as maintenance and repair is concerned, is vigorously urged upon us, to wit: that a master upon whom rests the duty of using reasonable care to provide and maintain for the use of his servants in their work reasonably safe mechanical instrumentalities may perform that duty by furnishing to a fit and competent agent the materials or parts out of or by means of which the instrumentality as a working entity can be either created or maintained, and that for the shortcomings of the agent in his utilization or failure to utilize this material or these parts the master assumes no responsibility.  In so far as the defendant's contention assumes that there is a difference as respects the master's duty between construction and maintenance, it is without foundation.  To whatever extent the contention is carried it also involves principles which have had the repeated disapproval of this court.  The master's duty requires performance.  It may be performed in person or by one delegated to that end.  In either event the thing required must be done.  Delegation to a fit and competent agent is not sufficient.  *Wilson* v. *Willimantic Linen Co.,* 50 Conn. 433 ; *McElligott* v. *Randolph,* 61 id. 157 ; *Gerrish* v. *New Haven Ice Co.,* 63 id. 9, 16.

Let us return now to the defendant's premise that the proximate cause of the injury complained of was the superintendent's failure to place thimbles in the loops of the splice.  It is doubtless true that had thimbles been inserted in making the splice the cables would not by use have become so worn and defective at the points of tension that they would have parted when they did.  To this extent the failure to insert the thimbles was without doubt the cause—but the remote

one—of the accident. The proximate cause, however, was the worn and defective condition into which the cables had been suffered to lapse by being used for a considerable period of time without such repair or replacement as was necessary in view of the way in which the splice was made, to maintain the requisite condition of strength. The cable as spliced was not able to stand as great a strain as one spliced with thimbles ; but it does not appear that without them it was not originally sufficiently strong to do the work required of it. Its original strength became dissipated as the consequence of wear and tear and a failure in the duty of maintenance. The worn and weakened condition which resulted may not have been known to the defendant or its superintendent, and apparently was not, as it is found that no inspection was made ; but that is of no legal consequence, since it is found that it was so apparent that an inspection would have revealed it. In other words, the failure which was the true proximate cause of the parting of the cable, and thus of the intestate's injuries, was one in the master's duty of reasonable inspection. The manner of the splice was known, for Toole made it; the consequences thereon of wear were palpable, and therefore such as the defendant and Toole were bound to anticipate. The duty of inspection was one to be exercised in the light of these conditions. The facts, therefore, disclose a clear failure on the part of the defendant as master in the performance of its duty towards the intestate.

If it be suggested that the cable was by the manner of the splice inherently weak and thus defective, the master is not thereby exonerated. In that event, his failure in the duty of using reasonable care to provide reasonably safe instrumentalities only assumes a slightly different aspect; but it is the same duty. The duty of the master is the same in its essence whether it, in a given case, assumes the immediate form of original provision, maintenance, or inspection as an incident of maintenance. All are involved in the general duty of provision, which, as we have seen, is a continuing one and an unchanging one.

Three rulings upon the admission of evidence are assigned as erroneous. Only one is pursued in the brief. The intestate's widow being upon the stand, the court permitted the plaintiff to ask her the age of his parents at their death, as bearing upon his health and constitution. Her reply was seventy-eight and seventy years, respectively. Rulings of this character, where the vice, if any, in the evidence offered, is remoteness, can seldom be of sufficient consequence to warrant the granting of a new trial. Much must be left to the discretion of the court. *State* v. *Kelly*, 77 Conn. 266. This ruling furnishes no exception to the general rule.

None of the corrections which the defendant claims should be made in the finding assume any importance in view of our conclusions.

There is no error.

In this opinion the other judges concurred.