GEORGE H. NICHOLS *vs.* HARVEY HUBBELL, INC.

Third Judicial District, Bridgeport, April Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

For negligence in the performance or nonperformance of a master's duty toward his servant, whereby the latter is injured, the servant is entitled to recover damages, whether the specific act of neglect be that of the master himself or one of his agents.

The defendant, a corporation, undertook to make certain alterations and repairs upon its property, including the construction of a brick oven for baking japanned ware, which collapsed and injured the plaintiff, a carpenter, while he was removing the woodwork supporting the arched roof, after the mortar and cement had set and hardened. The fall was due to the faulty and impractical design of the roof, the arch being too flat, and with no provision for cross-rods or buttresses to enable the side walls to resist the thrust of the arch. The defendant's representative employed M, a building contractor, to supervise the changes, including the construction of the oven, at a *per diem* compensation plus an allowance of fifty cents per day for each man he employed

to work upon the job, and the plaintiff was hired and paid by such supervisor with money furnished by the defendant's representative, but the latter retained and exercised the power to direct what should be done and the control of those employed upon the work. The plaintiff had judgment for $6,500 damages, and upon an appeal by the defendant it was *held:*—

1. That certain conclusions reached by the trial court, in so far as they were inferences or conclusions of fact, were reasonable and proper and were warranted by the evidence.

2. That the trial court was also fully justified in finding that the defendant's representative was responsible for the faulty design which was the cause of the accident.

3. That even if M had been in fault in the first instance in erecting the oven in conformity with a defective design and specifications, that fault would not have availed the defendant; as the selection of design and the furnishing of construction specifications were matters which lay within the field of the master's duty, for negligence in the performance of which the defendant master would be liable.

4. That in respect to design and specifications, M was the agent and representative of the defendant, and not a fellow-servant of the plaintiff.

5. That the ruling that M was not an independent contractor was correct upon the facts as the trial court had found and was justified in finding them.

An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of his work.

Argued April 12th—decided May 28th, 1918.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, brought to and tried by the Superior Court in Fairfield County, *Gager, J.;* facts found and judgment rendered for the plaintiff for $6,500, and appeal by the defendant. *No error.*

*Robert E. DeForest,* for the appellant (defendant)

*Carl Foster,* for the appellee (plaintiff).

PRENTICE, C. J. The plaintiff was injured while he was engaged as a carpenter in the construction of a

brick oven designed for the baking of japanned ware for use in the manufacture of electric light reflectors, and located upon property standing in the name of Harvey Hubbell. The oven was fourteen feet square, outside measurement, with walls from six to eight feet in height and one foot thick, and having a four inch air space between the outer and inner tiers of brick properly tied together. The roof was also of brick, designed and built in the form of an arch with a two foot spring, and supported by the side walls upon which it rested. For the construction of the roof false work, intended for its support during the process of construction and while the mortar was hardening and setting, was erected on the inside of the oven after the exterior walls were in position. The roof having been constructed by the masons and given proper time to set, the plaintiff, then engaged elsewhere about the premises, was ordered to remove the false work. He was occupied in this work when the structure collapsed and fell upon him. The collapse was caused by the outward thrust of the arched roof, which the side walls of the oven were unable to resist when the support furnished by the false work was removed.

The side walls were of ordinary construction and ordinarily well constructed. The accident was due to the faulty and impractical design of the roof or the inadequate provision for its support, in that it was too flat to be self-supporting and there was no provision of cross-rods or buttresses to enable the side walls to resist the thrust of the arch.

The plaintiff was in the immediate employment of one Moon as a workman at day wages, and it was he who directed the plaintiff to remove the false work. Moon was a building contractor, who had been engaged by one Abbott to supervise the repairs, alterations and additions to be made upon the Hubbell

property, including the construction of the oven. His compensation was a *per diem* one for his own work and a bonus or allowance of fifty cents a day for each man whom he should employ to work on the job. The selection and employment of these men rested with him. He received his pay, and the money required to pay the others employed upon the work, by the hand of Abbott, and in turn paid the men out of what he so received. Abbott, in making the improvements, alterations and repairs upon the premises, and in engaging Moon to supervise them, was acting at the suggestion of Hubbell, in consequence of some agreement with him, and occupying some relation to him. Hubbell was the owner of a very large majority of the capital stock of the defendant corporation, its manager, and practically the sole authority in the direction and control of its affairs.

The facts above stated, found by the court, are unquestioned. Its finding, however, does not stop there. It goes further, and finds certain other vitally important facts, which serve to characterize the relations which the several persons named bore to each other, substantially as follows: (1) That in so far as Hubbell acted in the premises he acted for and in the interest of the defendant; (2) that the oven was a part of the increased manufacturing facilities which the defendant was to furnish Abbott at its expense; (3) that the relation of Abbott to Hubbell, and through him to the defendant, was that of agent to principal, and that the former represented the defendant in all matters connected with the planning, construction, and supervision of construction, of the improvements and changes made upon the Long Hill property, including the oven; (4) that Abbott's employment of Moon was one in which the former, as the agent of the defendant, retained and exercised the power to direct what should

be done, and the oversight, direction and control of the work and of those employed upon it; and (5) that the responsibility for the faulty design of the oven, which was the cause of the accident, rested upon Abbott.

As conclusions of law from these facts, the court held: (1) That Moon was not an independent contractor; (2) that the negligence which occasioned the plaintiff's injuries was not that of a fellow-servant; (3) that at the time those injuries were sustained the relation of master and servant existed between the defendant and the plaintiff; and (4) that the injuries were sustained by reason of the defendant's failure in the performance of the duty which it owed to the plaintiff as his master.

The reasons of appeal challenge these conclusions, both those of fact and those of law. Their challenge, however, is primarily addressed to the former, it being charged that they were without justification in the evidence. Our examination of the testimony satisfies us that this charge has no substantial basis in any particular. It is quite voluminous, and of such a character that a review of it sufficiently adequate to indicate all its pertinent features would likewise be lengthy. A comparatively brief statement of the salient features of the situation before the court, as they are revealed in the testimony of Hubbell, Abbott and Moon, the chief actors in the drama, and nowhere controverted, will, however, suffice to disclose that the court's conclusions of fact above enumerated were not made without warranty of testimony and did not transgress the legal bounds of reasonable deduction.

Abbott was a former employee of the defendant corporation, which was and is engaged in the manufacture of electrical goods and appliances. Some two years prior to the accident in question he had left that employment and established himself in a small leased

shop, where he engaged in the manufacture upon his own account of appliances used by the defendant in connection with its business. These appliances, including electric light reflectors, he sold largely to the defendant. In the late spring or early summer of 1913 the demands of the defendant had so increased that Abbott had become unable to manufacture fast enough to supply them. The defendant was desirous that this condition be obviated, and also that Abbott extend his field of manufacture so that it should include additional products. Among other things it required a new line of reflectors, which Abbott was not in a position to produce owing to his lack of facilities. Hubbell took the matter up with Abbott, and as a result they together made investigations and examinations of plants and locations for the purpose of finding a place which could be utilized to provide the increased facilities which the defendant's needs required that Abbott should have. It was finally decided that the property at Long Hill, which Hubbell owned, could, by alterations, additions and repairs, be so utilized and that that course be pursued. Hubbell was about to sail for Europe when this decision was reached. He thereupon told Abbott to go ahead and make certain improvements upon the property, for which he agreed to pay, and a day or two later, early in July, sailed. Abbott went ahead, employed Moon, whom Hubbell had suggested as foreman of construction, and proceeded to direct much more extensive alterations and additions than he and Hubbell had talked of. These had progressed so far that bills therefor had been incurred when, in the latter part of August, Hubbell returned. At this time the oven was in progress, but had not reached the point at which its collapse occurred. Immediately upon Hubbell's return he visited the property and there met Abbott. He saw what had been done and was in

progress under Abbott's directions, and became aware of its character and extent. He thereupon acquiesced in what Abbott had done and projected, concurred in the continuance of the work, and O. K'd bills for that which had been done in his absence. These bills he found on file in the office of the defendant, awaiting his return and approval, and payment of them was made by the defendant out of its own funds immediately upon his approval of them. All this was done prior to the collapse of the oven, which occurred about a week later. The work upon the alterations and improvements, with Hubbell's authorization, continued without interruptions or change, and under Abbott's direction, until September 21st, when the defendant took a lease of the property from Hubbell and assumed the management and operation of the plant, with Abbott as its operating manager receiving a stated salary. During this period payments were made by the defendant, upon the O. K. of Hubbell, on account of the work which had been done. The projected improvements were not finished on September 21st, and were continued for a considerable time thereafter, and the bills therefor to a considerable amount were paid by the defendant. During the summer and prior to Hubbell's return from Europe, a telephone in the defendant's name was placed on the property.

From this outline of the outstanding general features of the situation as testified to by the chief participants in the transactions involved, especially when the light is thrown upon them which is supplied by sundry detail features of the evidence and such significant admissions, for instance, as those of Hubbell, that before the decision to utilize the Long Hill property was reached he had determined, on account of the defendant's necessities, to furnish Abbott the facilities required to enable him to supply its requirements, that

upon his return he assumed the investment which was
being made in the development of the property, and
that shortly following the accident his company took
up the matter of accident insurance for it, covering the
operation at Long Hill, it is easy to see that a sub-
stantial basis was furnished by the testimony for each
of the court's first three conclusions of fact above stated.

The fourth is amply supported by the testimony of
both Abbott and Moon. Their evidence is clear and
uncontradicted that Moon's employment was one call-
ing in part for his personal participation in the work,
and for his oversight as foreman of what Abbott should
require to be done, and that Abbott retained and exer-
cised the right to direct what that should be and how
it should be done, and the oversight, direction and
control of the work and of those who should be engaged
in the execution of it.

The court was also fully warranted in finding that
the responsibility for the faulty design, which was the
cause of the accident, was Abbott's. That conclusion
follows naturally and inevitably from the finding as to
the relation he held to the work as the representative
of the defendant and the person in immediate authority
and control of the work. It is quite immaterial as re-
gards this matter of responsibility, whether Abbott or
Moon personally, or both in consultation, determined
upon the design of the structure which fell or the in-
sufficient specifications for its construction. The ulti-
mate responsibility would in either case be upon Abbott
as the man in superior authority.

Were it so, however, that Moon was in the first in-
stance at fault in causing the structure to be built in
conformity with a defective design and specifications,
that fact would not help the defendant. The selection
of design and provision of construction specifications
were matters which lay within the field of the master's

duty. In so far as the factor of provision of a reasonable place in which employees might work was involved in them, they were especially so. Whoever, whether Abbott or Moon, was the man whose negligence was the immediate cause of the setting of the trap in which the plaintiff was caught, the responsibility goes back to the master. The negligent person, agent though he was, was engaged in an attempt to perform the master's duty, and for nonperformance of it the master is liable. *McElligott* v. *Randolph,* 61 Conn. 157, 162, 22 Atl. 1094; *Rincicotti* v. *O'Brien Contracting Co.,* 77 Conn. 617, 621, 60 Atl. 115. Neither would the defendant, could it succeed in establishing that the immediate act of negligence in the matter of design and construction specifications was Moon's, relieve itself from liability, through a conversion of the negligence into that of a fellow-servant. Moon, in respect to these matters, whatsoever position he may have occupied as regards others, was not a fellow-servant of the plaintiff. He was the master's agent and representative attempting to perform the master's duty. *McElligott* v. *Randolph,* 61 Conn. 157, 164, 22 Atl. 1094; *Gilmore* v. *American Tube & Stamping Co.,* 79 Conn. 498, 502, 66 Atl. 4.

Upon the facts found, and which, as we have seen, must stand, the court's ruling that Moon was not an independent contractor was correct. "'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work.'" *Alexander* v. *Sherman's Sons Co.,* 86 Conn. 292, 297, 85 Atl. 514. These conditions were not satisfied in the case of Moon's employment. Upon the subject of the contractee's liability, see also *Douglass* v. *Peck & Lines Co.,* 89 Conn. 622, 629, 95 Atl. 22.

The three remaining rulings hereinbefore enumerated have already had such incidental consideration in our discussion of the findings of fact, that further consideration of them is rendered unnecessary. As the facts have been found and must remain, the court's ultimate conclusion that the defendant, as the plaintiff's master, is legally responsible to him for its failure to perform, either by itself or through its agents, its duty owed to him as its servant to use reasonable care to provide him a reasonably safe place in which to work, and therefore liable to him for the consequences of the negligent conduct of its agent or agents shown in this case, was the correct one.

The defendant's final claim, that the court erred in not finding that the plaintiff was guilty of contributory negligence, is without foundation in the evidence. We are unable to find any which tends to show that he knew, or ought to have known, that the work in which he was engaged, pursuant to the orders of his foreman, was in any respects dangerous, either inherently or as the result of the inadequacy of the design of the oven or of its structural details.

There is no error.

In this opinion the other judges concurred.