## RACKLIFFE BROS. CO., INC.
*vs.*
## CORNELIUS J. DANAHER, COM.

Superior Court      Hartford County      File No. 62094

MEMORANDUM FILED MARCH 19, 1940.

*Edward A. Mag,* of New Britain, for the Plaintiff.

*Francis A. Pallotti,* Attorney General; *Harry Silverstone,* Assistant Attorney General, for the Defendant.

INGLIS, J. In this appeal from the assessment of an unemployment compensation contribution against the plaintiff, the sole question is as to whether one Fred R. Hall is an employee of the plaintiff and whether, therefore, the contribution was properly assessed with respect to the compensation paid to him in 1937, 1938 and 1939. The contention of the plaintiff is that said Hall was not in the employment of the plaintiff corporation but rather was an independent contractor.

Since 1935 said Fred R. Hall has held himself out as a con-

sultant on business management and as a matter of fact has been regularly engaged from time to time by various concerns to advise them on the conduct of their business. His first connection with the plaintiff was made in June, 1936, at which time he was by vote of the directors "engaged in an advisory capacity for an indefinite period at the pleasure of the board of directors" at a compensation to be dependent upon the number of days per week which he should devote to the work. At that time the officers of the plaintiff company announced to the employees that Mr. Hall had been retained for a six months' period.

Commencing as of January 1, 1937, the relationship of Mr. Hall to the plaintiff changed as is shown by vote of the directors on February 4, 1937. That vote reads as follows: "It was voted to appoint F. R. Hall as Managing Director [sic] of the corporation for the term of one year commencing January 1st, 1937 at such compensation as may be determined upon by the salary committee and be approved by the board of directors. The duties of Managing Director shall be to organize, direct and supervise the officers, personnel and the operation of the corporation on behalf of and subject to the approval of the board of directors and to make regular reports of such operations to the board of directors."

As provided in that vote Mr. Hall's salary was later fixed at $400 per month for January and February and $300 per month thereafter. The figure of $300 was arrived at on the basis of an estimate that he would devote two days a week to the affairs of the corporation. Mr. Hall testified that he ordinarily charged for his time at that rate. It apparently, therefore, was the intention of the parties that the compensation provided for should be for the time which Mr. Hall should devote to the affairs of the company.

The by-laws of the corporation as they were on February 4, 1937, are not in evidence. At the meeting of that day, however, the directors started in motion a revision of the by-laws and such a revision was adopted by the stockholders in December, 1937. The by-laws as so revised state that the officers of the corporation should be a president, etc., "and such other officers as the directors may designate and appoint." Those by-laws also provide in article III, relating to officers, as follows: "The Board of Directors may appoint a Managing Director and delegate to him from time to time any of the powers of the

Board of Directors with respect to the management of the business and affairs of the Corporation or with respect to the duties of the officers." They further provided that notes of the corporation should be signed by the treasurer and the "Managing Director.".

With this background, it appears that by their vote of February 4, 1937, and certainly by their votes for subsequent appointments of Mr. Hall, the directors intended to create an office of managing director and that in appointing Mr. Hall, they intended to make him an officer of the corporation.

The relationship created between Mr. Hall and the plaintiff in 1937 has been continued in 1938 and 1939 by votes adopted by the directors on February 14, 1938 and October 5, 1938, respectively. These votes are in substance simply that it was voted to continue the appointment of F. R. Hall as managing director on the same operating basis.

Since the beginning of 1937, Mr. Hall's regular practice has been to visit the offices of the plaintiff in New Britain on Tuesday and Wednesday of each week. He has no desk or office space assigned to him, but his regular routine is to draw off from the records of the company such data as he is interested in and keep records of his own as to that data. He generally spends one day in conference with the president and another with the assistant treasurer going over the affairs of the corporation, particularly with reference to the sales and the expense items and giving orders to them and the other officers and employees relating to the conduct of the business. Mr. Hall's home is in Hingham, Mass. He pays his own traveling expenses incurred on his trips to New Britain, but on the few occasions when he has to travel elsewhere for the company, his traveling expenses are paid by the plaintiff. His name is not on the payroll of the company but each month he submits a bill "for professional services, $300", and is paid, the payment being charged on the books of the plaintiff to "expense."

In addition to giving directions to the other officers as to the conduct of the business, he has from time to time negotiated settlements with creditors, procured the extension to the company of a line of credit at the Nashua (N. H.) National Bank, and done other specific things. He testified that he considered it a part of duty under his appointment to do such things and, if the directors should direct him to, for instance, negotiate a sale of a portion of the business on certain specified terms, he

would feel bound to carry out their orders if he agreed that it was good business for the company. If he did not approve, he testified, he would resign.

On all of the evidence it is clear that he is practically the general manager of the business and occupies the same position in the company that the chief executive officer, whatever his title, occupies in every company.

It does not follow that one who is rendering service to another for hire is an independent contractor because he holds himself out as ready to render a certain sort of service to any' one who will hire him. *Nichols vs. Hubbell*, 92 Conn. 611. The real question is as to what his relationship is to each sepa' rate employer. Nor does the fact that one works for two or more employers prevent his being an employee of each one. *Kinsman vs. Hartford Courant Co.* 94 Conn. 156. It is like' wise immaterial that an employee is not on his employer's pay' roll. *Caraher vs. Sears, Roebuck & Co.*, 124 Conn. 409, 414.

"The controlling consideration in the determination whether or not the relationship of master and servant exists, or that of independent contractor, is: 'Has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work'." *Jack and Jill, Inc. vs. Tone*, 126 Conn. 114, 119, 9 Atl. (2d) 497, 499.

In the present case it is clear from the express provisions of the contract of employment, as that is set forth in the vote of the directors appointing Mr. Hall and from the interpretation of that vote by the parties evidenced by the practice of the parties, that the plaintiff does have control of the methods of the doing of the work by Mr. Hall, and that, therefore, Mr. Hall during 1937, 1938 and 1939 has been in the employment of the plaintiff.

Judgment may enter dismissing the appeal and confirming the assessment of the contribution made by the administrator.