Wilson *v.* Town of Granby.

———◆◆◆———

## AUGUSTUS C. WILSON *vs.* THE TOWN OF GRANBY.

The limit of duty on the part of a town with regard to the condition of its highways, falls far short of making them absolutely safe under all circumstances, even for those who use them properly. And where the use is one that reasonable care and prudence could never have anticipated there is no duty on the town at all in reference to it.

And it makes no difference that the injury in such a case is the result of defects in a highway for which a town would be responsible in case of injury to individuals in the lawful and proper use of it.

Damages for an injury from a defect in a highway should be compensatory merely, unless the jury should find gross negligence on the part of the town, in which case they may increase the amount by considering the expenses of the plaintiff's suit, not including the taxable costs.

A witness for the plaintiff having testified that a load that had broken through a bridge of the defendant town was in his opinion a proper one, and that he had driven such loads through the neighboring towns without breaking through the bridges, it was held that the defendants might show that the wit-

Wilson v. Town of Granby.

ness had with such loads broken through the sluice bridges and injured the roads in one of the neighboring towns.

The plaintiff, who was riding upon the load, had received a personal injury when it broke through the bridge  Held that his statements to a physician who attended upon him for the purpose of giving him treatment, with regard to the character and seat of his sufferings, were admissible.

The statute (Gen. Statutes, tit. 19, ch 13, sec. 2,) which provides that either party on a trial may in writing request the court to charge the jury specifically upon any questions of law, and that the charge upon the questions so presented shall be in writing, is mandatory, and not merely directory, and must be obeyed.

TRESPASS ON THE CASE for an injury from a defective bridge of the defendant town; brought to the Superior Court in Hartford County, and tried to the jury on the general issue before *Culver, J.*

Upon the trial the plaintiff introduced evidence to prove, and claimed he had proved, that on the 5th day of August, 1876, he was residing in the town of Windsor, in Hartford County, and then went into the neighboring town of Granby, after a quantity of lumber which he had previously purchased, with a team consisting of six mules, averaging 1,100 lbs. in weight, including the weight of the plaintiff and the driver; that he loaded the lumber, weighing 10,236 lbs., upon the wagon, and started over a highway in the defendant town for his home, riding upon the load with the driver; that the highway was an important highway of the town, and was the main thoroughfare from the villages of Winsted, Riverton, Barkhamstead, and other villages on the west, to Granby, Windsor, Windsor Locks, East Granby, and Suffield, in this state, and to Springfield and Westfield in the state of Massachusetts, on the east; that there were upon the highway over which he would have to pass, four bridges; that the plaintiff and the load passed safely over the first three bridges, but in passing over the fourth bridge, (which it was agreed was a truss bridge of two spans, one twenty-eight feet, and one forty feet in length between pier and abutment), after four of the mules had crossed over the bridge and the last pair were about to step off from it, the bridge broke and fell, precipitating the load into the stream and throwing the plaintiff violently from

his seat upon the rocks below, inflicting upon him severe personal injuries.

The plaintiff also offered evidence to prove, and claimed to have proved, that the bridge fell because of its structural defects, and that those defects consisted of the manner in which the truss bolts were made and secured at their ends; that the bolts at their upper ends were improperly reduced in size, and secured by nuts of insufficient thickness, and at their lower ends were secured by two prongs or claws, formed by splitting the lower ends of the bolts a distance of two inches, and turning out the parts horizontally; that when the load came upon the longer span of the bridge one of the prongs upon the truss-bolt at the southeast corner broke off and the other straightened out, causing the girder and the floor of the bridge, which were wholly supported by these prongs, to fall at this point a distance of about five and a half feet, and thereby causing the accident.

The plaintiff also offered evidence to prove, and claimed to have proved, that by the falling of the bridge he received serious and permanent injuries; that his spinal cord was injured, and that his mind was affected thereby; that his right side was partially paralyzed, rendering him wholly and permanently unable to labor, and that he was badly injured otherwise; that at the time of the injury he was forty-eight years of age, and had always before enjoyed good health.

The plaintiff further offered evidence to prove, and claimed to have proved, that he was in the exercise of ordinary care and prudence in all respects; that he had no knowledge of the defects in the bridge; that the driver was careful and experienced, and drove carefully and skillfully upon the bridge; and that the driver was accustomed to draw with the same team loads larger and heavier than the load in question. The plaintiff also introduced evidence to prove, and claimed to have proved, and a large number of witnesses testified, that in the defendant town, and in the towns adjacent and neighboring thereto, loads as large and larger than this load of the plaintiff were transported upon and over the highways and bridges; that heavy loads of lumber, railroad ties, pow-

der, and other merchandise, were transported over the highway in question; that droves of cattle passed over it, as also caravans and menageries with their heavy loads, and that the plaintiff's load was not an unusual or extraordinary one for the highways and bridges of this town and the towns adjoining, but was a reasonable and proper load for these highways; and that from the location of the highway, and its general character, and also from the general character of the bridge, the plaintiff had no reason to doubt that he could pass safely with his load over the bridge, and believed that he could so pass.

The defendants offered no evidence to show that the bridge was constructed differently from what was claimed by the plaintiff, but they claimed that it was not defective. It was admitted that the bridge was one which it was the duty of the defendants to make and keep in repair.

The plaintiff introduced as a witness Dr. George C. Jarvis, who testified that he was a practicing physician and surgeon, and had been since 1861; that the plaintiff had been substantially under his treatment since the latter part of August, 1876; that it was about August 30th, 1876, that he first called to see him; that Dr. Ensign was with him at the time he first called on the plaintiff; that he found he had a very badly bruised back; that from below the shoulder-blade down on the right side it was badly bruised; that at the lower end of the spine, a little one side, there was a sore close to the spine about five inches long and three wide; that he noticed a peculiarity in his breathing, and examined his lungs and found an injury to his right lung; that he observed a great deal of difficulty in his moving his legs; that he examined his person from his hip down; and that the plaintiff complained of numbness in his legs and right arm, but more especially in his legs. At this point the defendants objected to the witness testifying to what the plaintiff said while the witness was examining him, and especially as to his complaining of numbness in his right arm, upon the ground that the witness could only testify to what he saw and observed as to his condition, and that any declarations of the plaintiff were

in the nature of hearsay testimony. The court overruled the objection, and received the testimony as to what the plaintiff said about numbness in his right arm. The plaintiff's counsel then put the following question to the witness: "From the plaintiff's complaining of numbness and the difficulty of moving his limbs, and from the examination you made of him at that time, what, in your judgment, was the seat of his injury?" The defendants objected to the question upon the same ground as the preceding, but the court overruled the objection and admitted the evidence. The witness answered, "I judged that his right lung was injured; also his spinal cord."

Among other witnesses introduced by the plaintiff was one Case, the owner of the team, who testified that the load in question was a proper and reasonable one, that his team of six mules was accustomed to draw loads of from three to eight tons, and that he carried such loads through neighboring towns, and wherever any one employed him to go, and never broke through any bridge but this. The defendants afterwards introduced one Norris Holcomb, of Bloomfield, who testified that he had been highway surveyor of that town and had the care of its roads for six years; that he knew Case, and had seen his teams frequently; and that he knew of large loads being drawn through his town by him. The defendants then asked the witness what effect it had upon the roads and sluices. To this question the plaintiff objected as being irrelevant, and the court excluded it.

The defendants then introduced evidence to prove, and claimed to have proved, that the road was in the western part of the town of Granby, in a very sparsely populated region; that there was so little traffic upon it that it was frequently closed for weeks in the winter, and that there were many days in other seasons when not a single wagon or cart passed over it; that the road went over very steep hills, and that usual and ordinary large loads passing over it did not exceed 3,000 lbs. in weight, and that the largest loads passing over it, except that of the plaintiff at the time of the accident, did not exceed 4,000 lbs. in weight, consisting of wood and

railroad ties; that no traffic at all, and no such loads west of the summit of a high hill, about one and one-half miles west of the bridge, came eastward, as the hills were not passable for loads of more than 3,000 lbs. over the road, and none of such weight except a candy team with its largest load, 4,000 lbs., ever went to the westward across the bridge and over the road.    That the plaintiff, having purchased a lot of ash plank at a saw-mill on the eastern slope of a hill on the road, about a mile west of the bridge, on the 5th of August, 1876, went from Poquonnock in Windsor, where he resides, with a team belonging to R. D. Case, and a driver, to remove the plank to Poquonnock; that the team consisted of three pairs of mules, each pair averaging 2,200 lbs.; that the ash planks which were loaded upon the wagon weighed more than they did six weeks afterwards, when they weighed 10,236 lbs.; that the planks measured 2,543 feet exclusive of the wain thereon, and were nearly green; that they were of varying lengths, from ten to sixteen feet long, and were loaded without regarding lengths, the varying lengths being mixed in the load; and that the load was about nine feet high, and the seat whereon the plaintiff and his driver sat was eight feet high from the ground.    Also that the bridge in question was a truss bridge consisting of two spans, as claimed by the plaintiff, and that it was twelve feet wide.    The defendants then offered evidence to prove, and claimed to have proved, that the plaintiff drove upon the bridge over the west and shorter span upon the east and longer span, with the mules, wagon, and load, and with the driver and the plaintiff upon the seat; that all of them were at one time on the east span, and that, at the time the bridge fell, one pair of the mules, with the wagon and load, were upon the bridge.    They also introduced evidence to prove, and claimed they had proved, that no such load had ever before passed over the roads in that town; that the load was an unusual and extraordinary one for that and adjoining towns, and that whenever a load exceeding in weight four tons in exceptional cases had passed, special care had been taken, and the bridges had been examined and shored up to strengthen them.

The defendants requested the court to charge the jury as follows:

1st. The duty of the town, with reference to the bridge in question, was to build and maintain such a bridge as would be convenient and safe for the travel and traffic which might reasonably be expected to pass over it.

2d. Even if the bridge was faulty in its construction, yet the plaintiff cannot recover unless it be found that the injury happened in consequence of such faults.

3d. If the load carried over this bridge was unusual and extraordinary, the plaintiff took his own risk, and cannot recover if the accident happened in consequence thereof.

4th. If the load was unusual and extraordinary as to its bulk or weight, and not suitable or adapted to a way opened and prepared for the public use in the common intercourse of society, and in the transaction of the usual and ordinary affairs of business on the road, the plaintiff took every possible risk of loss and damage on himself.

5th. That in such case the plaintiff cannot recover for injuries sustained, although they were the direct results of defects and imperfections in the bridge.

6th. If the plaintiff knew the load was such as to endanger the bridge, and he unnecessarily rode upon the load over the bridge, he did so at his own risk, and cannot recover in this suit.

The court charged the jury as follows:—

"To entitle the plaintiff to recover he must prove by a preponderance of evidence:

"1st. That the bridge in question was one which it was the duty of the defendant town to build and keep in repair.

"2d. That he gave the town notice of the time and place of the injury, as he has alleged in his declaration.

"3d. That he received his injuries by reason of the bridge being defective.

"4th. That he conducted with ordinary care; that is, that the want of such care did not materially contribute to the injury; because, if it did, however defective the bridge may

have been, he cannot recover.   There is no dispute between the counsel as to the law upon this point.

"5th.   That the town had notice, actual or implied, that the bridge was defective.   That as the statute does not prescribe any standard to which bridges shall conform either in point of form or strength, it is a question of fact for you to determine from all the evidence and circumstances whether it was defective or not.   (The court up to this point charged in writing, but not afterwards.)

"The defendants ask the court to instruct you that the duty of the town, with reference to the bridge in question, was to build and maintain such a bridge as would be convenient and safe for the travel and traffic which might reasonably be expected to pass over it.   I do not see any objection to this.   Also that, even if the bridge was faulty in its construction, yet the plaintiff cannot recover unless it be found that the injury happened in consequence of such faults.   I charge you in conformity to this.   I have already told you that the plaintiff must prove that the injuries were sustained by means of the bridge being defective.

"Again that, if the load carried over the bridge was unusual and extraordinary, the plaintiff took his own risk, and cannot recover if the accident happened in consequence thereof.   I do not subscribe to this as an abstract proposition of law.   I know of no authority in this state to warrant it, and have been referred to none.   But you should consider whether the load in question, its weight, and everything about it, satisfied you that the plaintiff exercised ordinary care and prudence, and if not, whether *that* essentially or materially contributed to the injury.   Also consider the weight of the load in determining whether the bridge fell in consequence of being defective.

"Again, that if the load was unusual and extraordinary, as to its bulk or weight, and not suitable or adapted to a way opened and prepared for the public use in the common intercourse of society, and in the transactions of the usual and ordinary affairs of business on said road, the plaintiff took every possible risk of loss and damage upon himself.   Upon

this claim I repeat substantially what I have said upon the others, that it is to be considered by you in determining the question as to whether the plaintiff exercised ordinary care and prudence, and whether the injuries were received by means of the bridge being defective. I have already said the law does not prescribe any standard to which bridges must conform in point of strength. You should act reasonably and exercise your good sense.

"Again, that in such a case the plaintiff cannot recover for injuries sustained, although they were the direct results of defects and imperfections in the bridge. Upon this claim I say to you again that, if the accident happened through the plaintiff's want of ordinary care and prudence, he cannot recover.

"Also that if the plaintiff knew the load to be such as to endanger the bridge, and he unreasonably rode upon the load over the bridge, he did so at his own risk, and cannot recover in this suit. I see no objection to this; it is substantially what I have already said to you. If the plaintiff did not exercise ordinary care and prudence, and *that* essentially contributed to the injury, he cannot recover. It is a question of fact for you to decide."

The court charged the jury upon the question of damages as follows: "If you believe the testimony of the plaintiff's witnesses, (four of whom were physicians who claim to have seen and examined the plaintiff and applied various tests,) that he is permanently injured, his vital force gone, that he is partially paralyzed, that his mind is affected, and that he will never be able to perform any more labor, and if you should find a verdict in his favor, I will leave it to your own sense of right and justice what verdict you should render.

The jury rendered a verdict for the plaintiff for $6,000, and the defendants moved for a new trial for error in the rulings and charge of the court.

The judge appended to the motion a certificate that he did not understand that the counsel for the defendants requested him to charge in writing upon the points presented by their requests, and so did not do so.

*A. P. Hyde* and *C. H. Briscoe*, in support of the motion.

1.   Dr. Jarvis's testimony as to what the plaintiff said to him was not admissible.   The motion states that the plaintiff "complained of numbness in his legs and right arm."   The defendant objected, but "the court received the testimony as to what the plaintiff *said* about numbness in his right arm." And the doctor founds his opinion as to his case in part on " the plaintiff's complaining of numbness and the difficulty of moving his limbs."   It is clear, therefore, that it was not his actions, or groans, or convulsions, but his *statements* that the doctor repeated and founded his opinion on.   These were mere hearsay.   They cannot be regarded as *res gestæ*.   They were not *things*, but *declarations*.   It was too late for declarations to be a part of the *res gestæ*.   It was twenty-five days after the injury, and after notice to the town for the purpose of suing.   It is easy to see how the plaintiff might have been making evidence for himself.   There can hardly be more dangerous testimony admitted.   *Rowell* v. *City of Lowell*, 11 Gray, 420.

2.   Norris Holcomb's testimony was admissible to contradict the witness Case.   Case had said he had driven as heavy loads through neighboring towns and wherever he was sent, and had never broken a bridge.   Holcomb testified that Case frequently drove with great loads through Bloomfield, (showing that Bloomfield was one of the "neighboring towns" intended,) and that he repeatedly cut through the roads and broke through the sluices or small bridges.

3.   The judge should have charged (as requested by the defendants) that if the load was extraordinary in weight and not suitable or adapted to a way opened and prepared for public use in the common intercourse of society and in the transaction of the usual and ordinary affairs of business on the road, the plaintiff took the risk of damage upon himself. Instead of this he said: "These facts are to be considered by you in determining the question whether the plaintiff exercised ordinary care and prudence."   That is, if a party is moving an enormous shaft of stone for a monument, or an enormous locomotive on wheels, over a common highway, the

fact of its enormous weight is of no significance beyond its bearing on the question whether the plaintiff was in the exercise of ordinary care. This cannot be the law. The plaintiff in such a case may use the utmost care. He may shore up bridges; he may resort to every practicable means to reduce or distribute the weight, still the mere excess of weight may break down the bridge in spite of all the shoring. And the bridge may break in consequence of some structural defect, when it would have borne up any ordinary or reasonable weight. *Gregory* v. *Adams,* 14 Gray, 242; *Fox* v. *Glastonbury,* 29 Conn., 206; *Dimock* v. *Suffield,* 30 id., 129.

4. The court erred utterly in the instructions to the jury, as to the damages. The statute provides merely that a party in such a case may recover "damages." The old statutes, before the last revision, said "just damages." There is nothing to take the case out of the rule that applies to all damages. That rule is, that in the absence of gross negligence (or a culpable negligence amounting to criminal recklessness,) the damages must be merely *compensatory.* Here it is not claimed that gross negligence existed. None is found. None is even charged in the declaration. The facts found exclude the idea of it. It is a clear case therefore for the application of the rule that the damages are to be merely compensatory. 2 Wait's Actions & Defences, 446, 448; *Chicago* v. *Langlass,* 52 Ill., 256; *Tripp* v. *Grouner,* 60 id., 474; *Woodman* v. *Nottingham,* 49 N. Hamp., 387. The Connecticut cases fully sustain this position. *Linsley* v. *Bushnell,* 15 Conn., 225, 236; *Beecher* v. *Derby Bridge Co.,* 24 Conn., 491; *St. Peter's Church* v. *Beach,* 26 Conn., 355; *Dibble* v. *Morris,* id., 416; *Platt* v. *Brown,* 30 id., 336; *Welch* v. *Durand,* 36 id., 182, 185; *Lazarus* v. *Ely,* 45 id., 505. In the present case the judge laid down no rule at all, but told the jury that he "would leave it to their own sense of right and justice what verdict they should render." This was clearly error, and an error most injurious to the defendants.

5. The court erred in not charging the jury in writing upon the points presented by the defendants' requests. The statute expressly provides that "the charge of the court upon

Wilson *v.* Town of Granby.

questions of law so presented *shall be in writing.*" Gen. Statutes, p. 442, sec. 2. It can not be said that this is a mere *directory act,* and that the disregard of it by the judge does not affect the verdict. For it is the right of the party to know exactly what the judge has charged, so that he can carry the case up, upon the charge, for review. It can not be said that we should have called the attention of the judge to the fact that he had not charged in writing. The circumstances are not stated, and nothing will be presumed against us on this point. But in fact we supposed it was in writing until we asked for it of the clerk. Nothing was filed with the clerk. Up to a certain point the judge read from a manuscript, and appeared throughout to be reading from one. We had no suspicion to the contrary until after the verdict.

*W. C. Case* and *A. F. Eggleston,* contra.

1. The ruling in regard to the testimony of Dr. Jarvis and the question asked of him, was correct. The answers given by a patient to a physician, during a medical examination, are always admissible. They are a part of the examination. Dr. Jarvis was the medical attendant of the plaintiff, and his opinion as to the seat of the injury was admissible. Especially was this so after he had detailed to the jury the facts upon which such judgment was predicated. 1 Greenl. Ev., § 102; 1 Taylor's Ev., 531; *Barber v. Merriam,* 11 Allen, 325; *Bacon* v. *Charlton,* 7 Cush., 581; *Illinois Central R. R. Co.* v. *Sutton,* 42 Ill., 438; *Kent* v. *Lincoln,* 32 Verm., 591; *Howe* v. *Plainfield,* 41 N. Hamp., 135; *Perkins* v. *Concord R. R. Co.,* 44 id., 223; *Caldwell* v. *Murphy,* 11 N. York, 416; *Denton* v. *The State,* 1 Swan, 279; *Kearney* v. *Farrell,* 28 Conn., 321.

2. The defendant asked the witness Holcomb what the effect of certain loads was upon the roads and sluices in the town of *Bloomfield.* To this evidence the plaintiff objected as being irrelevant, and the court excluded it. The plaintiff complained that a certain *bridge* in the town of Granby was insufficient. This was the inquiry before the jury. Whether heavy loads affected the *roads* and *sluices* in the town of

Bloomfield favorably or unfavorably, could not shed any light on this question.

3. Whether or not the court charged the jury in accordance with the requests of the defendant is wholly unimportant, if the court charged according to law. The requests of the defendants' counsel are evidently intended to cover—1st, the duty of towns in respect to maintaining highways and bridges; 2d, the duty of any person traveling on a highway or bridge to use ordinary care; and 3d, the duty incumbent upon any person seeking to recover for an injury received by reason of a defect in a highway or bridge, to show affirmatively that no want of such care contributed materially to the injury. If the requests imply anything more than this, the court was under no obligation to take notice of it. The court, upon all these points, clearly charged according to law. The precise instructions asked for by the defendants were given, except as to the effect of the unusual character of the load. So that the defendants have not been injured unless it should appear that the refusal of the court to charge as requested upon this point was wrong. They requested the court to charge, upon this point, that if the load carried over the bridge was *unusual* and *extraordinary*, the plaintiff took his own risk, and could not recover if the accident happened in consequence thereof. This was clearly an improper request. The real question for the jury to consider upon this part of the case was whether or not the plaintiff *had used proper care*. Upon this question the size and character of the load might properly be brought to the attention of the jury, as tending to show that the plaintiff had not used such care. This request was, in substance, that the judge should say to the jury that if they found the load to be "unusual" and "extraordinary," and if the accident happened in consequence thereof, their verdict must be for the defendants; and this, too, without any regard to the care that the plaintiff might have used. To state this same idea in other words, the request was that the judge should lay down a rule, *as a matter of law*, that the having an "unusual" or "extraordinary" load *excluded the possibility of using due care*. An analysis of

this request shows that the court did rightly in disregarding it. The court gave the jury the correct instruction, that the load, its weight, and everything about it, were to be taken into consideration by them in determining the question of care; and also that all these things were to be considered by them in deciding whether the bridge fell in consequence of being defective. There is no *law* to determine absolutely what constitutes due care. It is a question of fact. Each case depends upon its own circumstances. It is not for the court to say that the existence of certain things constitutes the want of due care. It is to be judged of by the jury. This rule was clearly followed by the learned judge in the court below. In this he was right. Any other course would have been wrong. *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566.

4. It is claimed that the judge refused to charge in writing "as requested." This claim, as appears by the record, is erroneous. The court *did* charge in writing. And as a matter of fact no such request was made.

5. There was no error in the instructions of the court as to the damages. *Seger* v. *Town of Barkhampsted*, 22 Conn., 297; *Masters* v. *Town of Warren*, 27 id., 298; *Worster* v. *Proprietors of Canal Bridge*, 16 Pick., 247.

LOOMIS, J. The motion shows that there was evidence enough adduced on the trial tending to show that the load, on which the plaintiff was riding at the time of the accident, was so unusual and extraordinary, both in weight and bulk, as to call on the court, in its charge to the jury, to give the defendant the benefit of the rules of law applicable to such fact, if the fact should be found. The attention of the court was called to this point in the fourth and fifth requests of the defendants, which were as follows:—

"4th. If the load was unusual and extraordinary, as to its bulk or weight, and not suitable or adapted to a way opened and prepared for the public use in the common intercourse of society, and in the transaction of the usual and ordinary affairs of business on said road, the plaintiff took every possible risk of loss and damage upon himself.

5th. "That in such case the plaintiff cannot recover for injuries sustained, although they were the direct results of defects and imperfections in the bridge."

The abstract propositions of law applicable generally to the case had been previously stated correctly. And in assenting to the correctness of the defendants' first request, the principle really involved in the fourth request had been virtually sanctioned by the court, although the jury would hardly appreciate it without further explanation. But when the court was called upon to apply the law specifically to the facts assumed to exist in the case, it would seem that the jury must have been misled by the answer. The comments upon the requests as made by the court to the jury amounted to a denial of the proposition of law involved. The jury were allowed to consider the facts only as bearing on the questions of ordinary care on the part of the plaintiff, and whether the bridge was defective. The obvious implication would be that if they found these two facts in favor of the plaintiff, the existence of such facts as the requests assumed to exist would not prevent a recovery. The error consisted in ignoring the bearing which the facts referred to might have as furnishing the measure and limit of the town's duty and consequent liability in the premises. The liability, if any, was only for some culpable omission of duty causing the injury.

The standard of responsibility can never be more extensive than the rule of duty. And the limit of duty on the part of a town falls far short of making its highways absolutely safe under all circumstances, even for those who use them properly. And where the use is one that reasonable care and prudence could never have anticipated there would be no duty on the town at all in reference to it.

If a ponderous locomotive steam-engine should be propelled over a town bridge, no one we presume would claim that the town ought to have provided for it. This of course is an extreme case, but it illustrates a principle applicable as well to any unusual and extraordinary load, however propelled along a road, not reasonably to be expected to pass over it. Our reasoning results in the conclusion that if a person uses

the town bridges and roads in any way that clearly transcends the limits of the town's duty, he must necessarily take the risk upon himself. This was the principle contained in the fourth request which was overlooked in the instructions to the jury. It was a proposition sound in law and adapted to the issue, and is fully sustained by the opinion of the court in *Gregory* v. *Adams*, 14 Gray, 242. In that case Merrick, J., says (p. 248): "This is the measure and extent of the obligation of towns in reference to the support and maintenance of public highways. They are not required to make preparations for the safety or convenience of those who undertake to use those ways in an unusual or extraordinary manner, involving peculiar and special peril and danger, whether it be in respect to the kind or character of animals led or driven, or the magnitude or construction of carriages used, or the bulk or weight of property transported. And if any person undertakes to use or travel upon a public highway in an unusual or extraordinary manner, or with animals, vehicles or freight not suitable or adapted to a way opened and prepared for the public use in the common intercourse of society and in the transaction of usual and ordinary affairs of business, he then takes every possible risk of loss and damage upon himself; and he can have no remedy against the town to recover recompense for injuries sustained, although they be the direct result of defects and imperfections in a way for which it would be responsible in case of injury to individuals in the lawful and proper use of it."

Other cases in Massachusetts recognize similar principles as applicable to a different state of facts. *Blodgett* v. *City of Boston*, 8 Allen, 237, and cases there referred to.

The parties made no requests in relation to the damages. And it may not be perfectly clear that we ought to grant a new trial on account of the charge as given on this subject. It was however somewhat objectionable as not giving the jury any rule at all on the subject except "their own sense of right and justice," and that too in a case where sympathy for the plaintiff would naturally produce a powerful effect. There was danger that the jury might take the charge as meaning

that their power over the damages was practically unlimited by any other rule. It would have been safer and better to have told the jury that the damages should be compensatory merely for the plaintiff's personal injury and sufferings, unless they found gross negligence, in which case they might increase the amount by considering the expenses of the plaintiff's suit, not including the taxable costs. *Linsley* v. *Bushnell*, 15 Conn., 255; *Beecher* v. *Derby Bridge Co.*, 24 id., 491; *St. Peters Church* v. *Beach*, 26 id., 356; *Dibble* v. *Morris*, id., 416; *Platt* v. *Brown*, 30 id., 336; *Welch* v. *Durand*, 36 id., 182.

We do not deem it necessary to discuss the question whether the omission of the court to charge in writing as requested would furnish sufficient ground for a new trial. The question is one not likely to occur again. The omission in this case was accidental, resulting from mere mistake and inadvertence on the part of the court.

It may be well however to remark that the statute on this subject (General Statutes, p. 442, sec. 2,) was enacted for the benefit of the parties litigant, that there might be no disputes as to the precise terms of the charge, and that the ground for a motion to review it might not be lost by any failure of memory in the judge. The statute is therefore mandatory, and not merely directory, and must of course be obeyed.

We see no good ground for the exceptions taken by the defendants to the rulings of the court relative to the admission and rejection of evidence, unless in the case of Norris Holcomb, whose evidence we think was admissible for the purpose of affecting the testimony of R. D. Case, the owner of the team in question, who, having been called by the plaintiff, testified that the load in question was a proper and reasonable one, and by way of supporting his opinion he was allowed to add, that he had been accustomed to draw loads of from three to eight tons weight through the neighboring towns, and had never broken through any bridge but this. This was not such a collateral and purely independent fact as by the rules of evidence is not allowed to be contradicted. It had some bearing on the reasonableness of the load, which

was a prominent and important question at issue in the case. And if it had appeared from the testimony of Holcomb that the loads drawn by Case's teams through the adjoining towns had broken through the sluices or seriously injured the roads, it would have taken away the only foundation given by him for his opinion that the load in question was reasonable and proper.

The ruling of the court admitting as evidence the statements of the plaintiff made to his physician, as to the character and seat of his sensations, for the purpose of receiving medical advice and treatment, was correct, and is abundantly supported by legal authorities. *Barber* v. *Merriam*, 11 Allen, 322; *Howe* v. *Plainfield*, 41 N. Hamp., 135; *Perkins* v. *Concord R. R. Co.*, 44 id., 223; *Kent* v. *Town of Lincoln*, 32 Verm., 591; *Caldwell* v. *Murphy*, 1 Kernan, 416; *Denton* v. *The State*, 1 Swan (Tenn.), 279.

A new trial is advised.

In this opinion the other judges concurred.