CHARLES H. GILMORE *vs.* THE AMERICAN TUBE AND STAMPING COMPANY.

Third Judicial District, New Haven, January Term, 1907.
BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The plaintiff, while operating a drop-press in the defendant's factory, was injured by the falling of a hammer through the breaking of a worn-out lacing of a canvas belt by means of which the hammer was raised. The preparation, insertion and replacing of these lacings—a work with which the plaintiff was unfamiliar, and which, for aught that appeared, required special skill—had been entrusted to *S*, another employee, who had been selected by the defendant with due care and had been provided with suitable material out of which to make new lacings. *Held* that under

Gilmore v. American Tube & Stamping Co.

these circumstances the trial court was fully justified in its conclusion that the duty of inspection was one which rested upon the defendant as master, for negligence in the discharge of which by *S*, it was liable to the plaintiff.

The duty of inspection is sometimes of such a character that it may properly be imposed upon either the master or the servant; and in such instances the question upon whom it rests becomes one of fact for the determination of the trial court.

In the present case it appeared that *S*, in addition to his other duties, at times operated a drop-press himself. *Held* that this did not make him a fellow-servant with the plaintiff while discharging the master's duty of inspection.

The relative rank of two employees is not ordinarily as reliable a test of whether they are "fellow-servants," as the nature and character of the duty violated by the offending servant; if this is a duty of the master, the neglect to perform it is the master's neglect.

That a witness is an expert in respect to drop-presses and their operation does not qualify him to testify as an expert as to the strength · and endurance of leather lacings.

Evidence that a defendant had exercised due care for fifteen years in respect to the subject-matter in suit is not admissible as tending to prove that he exercised due care on the occasion in question.

In an action to recover damages for a personal injury alleged to have been caused by the defendant's negligence, complaints made by the plaintiff to his attending physician, during actual treatment, of the throbbing of the wound and the loss of sleep, are admissible evidence in his favor.

The failure of a servant to obey the instructions of his master does not constitute contributory negligence, where such instructions had no reference to the danger which in fact caused his injury; even though it happens that the injury would have been less serious had the instructions been obeyed.

Argued January 23d—decided March 5th, 1907.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to and heard in damages by the Superior Court in Fairfield County, *Gager, J.;* facts found and judgment rendered for the plaintiff for $2,000, and appeal by the defendant. *No error.*

*Arthur M. Marsh* and *Henry B. Stoddard,* for the appellant (defendant).*

* Ordinarily but one attorney on the same side will be allowed to address the court in the opening argument.

*Stiles Judson,* for the appellee (plaintiff).

HALL, J.   The finding states substantially these facts :
The plaintiff sustained a serious injury to his hand by
the falling of a heavy hammer of a drop-press which he
was operating as an employee of the defendant.   The cause
of the fall of the hammer was the parting in two places of
the lacing of a double canvas belt by which the hammer
was raised.   The parting of the lacing was due to these
facts : at the time of the accident it was badly worn, so that
it was ready to part at certain points ; from previous wear
it was unfit for further use when it was last placed in the
belt before the accident; and owing to the character of the
lacing used it was improperly placed in the belt, in that it
was not doubled in drawing it back and forth through the
three holes in the four layers of the double belt, where it
was turned back to attach it to an iron sling by which it
was connected with the hammer.

The drop-press in question, with many others in the
same room, were under the care of a foreman, one Shea, a
competent workman who had been selected and assigned
for the purpose without negligence by the defendant, and
whose duties, among others, were to watch the condition
of the drop-presses, replace broken belts, insert belt lacings
when necessary, and to operate one of the drop-presses
when his other duties permitted.

For the purpose of cutting belt lacings therefrom to be
used in the factory, the defendant kept a stock of lacing
hide, which had been carefully inspected by competent
persons, in a room adjoining the press room and available
to said foreman when wanted.

The belt lacing, at the points where it parted, was not
observable by an operator of the press, and its condition
at these points could only be discerned by a particular ex-
amination after separating the double belt.   There was no
mechanical obstacle to prevent the plaintiff from pulling
down the belt on his machine and unlacing it, and examin-
ing the lacing, but it was not his duty to do so ; he had

never been requested to do this, and he was not familiar with the use of lacings. He had no knowledge of the condition of the lacing and paid no attention to it. It was the duty of the men in the press room to report the fact to Shea when a belt broke or a machine became out of order. The examination and inspection of the lacings had been confided only to Shea, and he was familiar with these duties and had performed them for several years.

The life of the inner belt of the double belt, which alone comes in contact with the pulley above—the purpose of the outer belt being for protection when the inner one breaks—is, in ordinary continuous use, about three months, and of a belt lacing, in ordinary continuous use, about six months. When a lacing was taken out on account of the breaking of an inner belt of a drop-press, Shea examined it, and it was his duty, if the lacing was found to be sound, to place it in use again, otherwise to discard it and put in a new one. The defendant did not cause the belt laces to be inspected except as above stated. The belt on the press in question had been in use about three months, and the lacing, when then placed in it, was, from previous wear, unfit for use.

Shea knew, or by the use of ordinary care would have known, of the defective condition of the lacing. He was negligent in using the worn lacing; in placing it in the belt without doubling it; and in failing to inspect and replace the lacing as frequently as was reasonably necessary to prevent accident.

The defendant used reasonable care in the selection and supervision of the fellow-servants of the plaintiff, and in the furnishing of materials provided for his employment. No belt lacing on a drop-press had ever broken before in the factory during the many years the defendant had used them.

These facts fall short of establishing what the defendant undertook to prove upon the hearing in damages, that it had fulfilled its duty to the plaintiff to exercise reasonable care to provide for him " reasonably safe appliances and instrumentalities for his work."

Conceding that it appears that the defendant at all times kept suitable material in a proper place ready for use from which sufficient belt lacings could have been cut, the case at bar differs in many important respects from *Whittlesey* v. *New York, N. H. & H. R. Co.*, 77 Conn. 100, 58 Atl. 459, and from *Kelly* v. *New Haven Steamboat Co.*, 74 Conn. 343, 50 Atl. 871, and other cases cited by the defendant, in which it was held that the master is not liable when he has provided his workmen with suitable appliances and materials which it is within their capacity to use, and the use and care of which are incidental to their work or are matters of detail entrusted to operators in the management of safe machinery.

It appears in the case before us that the duty of preparing and placing lacings in belts was never imposed upon the plaintiff, nor upon any other mere operator of a drop-press, but upon Shea. It does not appear that the work of preparing and adjusting the lacings were acts easily accomplished by the operators of the drop-presses, and which did not require the services of a person of special skill. It does appear that the plaintiff was not familiar with that work, and that upon the thirty-five drop-presses in the defendant's factory that work had been entrusted entirely to Shea for several years. While the duty of inspection is sometimes of such a character that it may properly be imposed upon either the employer or employee (*Bergin* v. *Southern N. E. Tel. Co.*, 70 Conn. 54–65, 38 Atl. 888), the finding shows very clearly that in this case it was not imposed upon the operator, since it appears that the condition of the lacing was not observable by him; that it could only be discovered by a particular examination; and since, as we have stated, it appears that the duty of watching its condition was imposed upon Shea.

In preparing the lacings, placing them in the belts, and inspecting them, Shea was not acting as a fellow-servant of the plaintiff. The defendant argues that Shea was not a foreman, and did not have control over the other men. Shea is referred to in the finding as a "foreman." Whether

he had authority over the other men does not appear. But the relative rank of Shea and the plaintiff in the defendant's business is not as reliable a test of whether they were fellow-servants as the "nature and character of the duty violated" by the offending servant. *Whittlesey* v. *New York, N. H. & H. R. Co.*, 77 Conn. 100, 102, 58 Atl. 459; *Kelly* v. *New Haven Steamboat Co.*, 74 Conn. 343, 346, 50 Atl. 871. That Shea at times operated a drop-press did not render him a fellow-servant with the plaintiff as to the other duties of the former, the failure to properly perform which caused the accident. These duties, which included the exercise of reasonable care in keeping the belt attached to the iron sling connected with the hammer in such a manner and with such belt lacings that the drop-press could be operated safely by the person working upon it, and also in inspecting the lacings to ascertain when they were so worn as to require replacing, were, upon the facts before us, duties of the employer. The employer entrusted these duties to a competent agent, Shea, and furnished him with necessary materials for discharging them. But this did not relieve the defendant from responsibility for the negligent failure of Shea to perform those duties. "The designation of an agent, however fit and competent, . . . does not . . . relieve the master from further responsibility. Until the agent thus selected and empowered in fact acts up to the limit of the duty of his master to act, the master's duty is not done." *McElligott* v. *Randolph*, 61 Conn. 157, 162, 22 Atl. 1094; *Rincicotti* v. *O'Brien Contracting Co.*, 77 Conn. 617, 620, 60 Atl. 115.

During the trial one Stapely, having qualified as to his "expert and practical knowledge of drop-presses and their operation, but not of the strength or endurance of leather lacings," was asked by defendant's counsel the following question: "Supposing in the operation of thirty or forty drop-presses over a period of fifteen or sixteen years, the lacings, at the point which we have looked at on Exhibit 2, are examined when the under belt is changed; that is, the under belt breaks perhaps every three or four months;

when it does, a new belt has to be put on, the lacing is taken out and then examined, and either replaced or a new one put in ; and in that time in the experience of that establishment no accident from the breaking of the lacing has occurred ; and the lacing which has been used over this period of years has been of substantially uniform quality and size and length, and the lacing has been of the same character over that period. What is your opinion, on these assumed facts, about the care and prudence that it indicates in the maintenance of those machines? "

This inquiry was properly excluded. Apparently the witness had not qualified as an expert upon the questions of what belt lacings were suitable, how they should be used, and how often they should be inspected and replaced with new ones, which were the important matters affecting the question of negligence in this case. And further, the fact that the defendant, for a period of fifteen years before this time had, when putting on a new belt, exercised reasonable care in examining the lacings and in replacing those worn out with new ones, did not tend to prove that it did so when this lacing was last put in the belt.

The ruling of the court admitting the complaints of the plaintiff to his physician, of the "wound throbbing at night, and loss of sleep," was correct. As the complaints were made during the "actual treatment" of the wound they were, in the absence of evidence to the contrary, presumably made for the purpose of receiving medical treatment and advice, and when made for that purpose were admissible. *Martin* v. *Sherwood*, 74 Conn. 475, 482, 51 Atl. 526 ; *Wilson* v. *Granby*, 47 Conn. 59, 76.

When the plaintiff was injured he was stamping what is known as a steel dome, and was in the act of seizing one to remove it from the iron stand of the press, when the hammer with the stamping form attached to it fell upon his left hand, crushing the fingers in a diagonal line, from and including the knuckle of his little finger, to and including the first joint of his first finger, so that it was necessary to amputate the crushed portions of the fingers.

He had been adequately instructed by the defendant as to the proper and careful method of inserting and removing the steel domes, by the thumb and the tips of the first and second fingers. When the hammer fell he had placed under it at least so much of his hand as was injured, and the court finds that in so doing he increased the injury to the extent that, had he followed the proper method, his injury would have been limited to his thumb and his first and second fingers. Among the reasons of appeal assigned are : that the court erred in ruling that the defendant had failed to sustain the burden of proof as to contributory negligence, since the facts showed that the plaintiff placed nearly his whole hand under the hammer, in violation of instructions ; and in rendering judgment for the full amount of damage suffered by the plaintiff, including that caused by his own misconduct and negligence.

These reasons of appeal cannot be sustained. The finding shows that the entire injury sustained by the plaintiff was caused by the fall of the hammer, occasioned by the negligent failure of the defendant to place and keep in the belt, in a proper manner, a suitable lacing, and that the plaintiff's conduct "in no way contributed to cause the falling of the hammer." It does not appear that the plaintiff increased or added to the extent of his injury by any act of *misconduct* or *negligence*. The finding does not state that in placing his hand under the hammer the plaintiff was guilty of negligence, but on the contrary expressly says that he was "exercising due care when said injury occurred." This finding is conclusive, unless the want of such care is a necessary inference from other facts found. It does not necessarily follow that the plaintiff was negligent because he was removing the steel dome in a different manner from what he had been instructed was the proper way, even though it appears that he would have received a less injury, or even no injury, had he followed the directions given him. The court finds that "the injury to the plaintiff was not due to the ordinary danger incident to the use of a press in reasonably safe condition." It was

evidently that ordinary and obvious danger only, arising from the possibility of injury from a wrong motion of the hand of the operator in inserting or removing the article to be stamped, or of the foot in controlling the motion of the hammer, against which it was intended to warn the plaintiff by the instructions given him, and not the danger that the belt might break from the improper use of unsuitable lacing, a source of danger wholly unknown to the plaintiff, and the one from which his injury really resulted. Having successfully avoided the danger against which he was warned, he was not necessarily negligent in failing to remove the steel dome in a particular way, for the purpose of avoiding a danger which he had no reason to anticipate. This question is very fully discussed in the case of *Smithwick* v. *Hall & Upson Co.*, 59 Conn. 261, 268, 21 Atl. 924, where it was held that the plaintiff was not prevented from recovering the full amount of the damage sustained by him by a fall from a platform upon which he was standing, caused by a danger arising from the defendant's negligence, against which the plaintiff had not been warned, by proof that he would not have fallen if he had obeyed his employer's order not to stand upon that part of the platform.

The court properly granted the plaintiff's motion to correct the finding, and denied that of the defendant.

There is no error.

In this opinion the other judges concurred.