ALICE E. CAVANAUGH, ADMINISTRATRIX, vs. THE
WINDSOR CUT STONE CORPORATION.

First Judicial District, Hartford, March Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

A master cannot escape responsibility for his negligence in furnishing his own servants with defective appliances for their use in the performance of a subcontract undertaken by him, merely because he had chosen to borrow the necessary apparatus from the contractor of the entire work, who had erected and was maintaining it, and to whose neglect the defects were primarily attributable.

Under such circumstances the master is bound to use reasonable care in the matter of inspection, and for his neglect in this respect is liable to one of his servants who is injured thereby.

The failure of a workman to change his position as directed by his superior, is not to be imputed to him as contributory negligence if the direction had no reference to the question of his personal safety, but merely to the better utilization of his services a moment later; nor can such failure be regarded in any legal sense as the proximate cause of his injury, although had he moved as requested he would not have been injured as the result proved.

Argued March 4th—decided April 22d, 1908.

Action to recover damages for personal injuries result-ing in the death of the plaintiff's intestate, brought to and heard in damages by the Superior Court in Hartford County, *Case, J.;* facts found and judgment rendered for nominal damages only, from which the plaintiff appealed. *Error and new trial ordered.*

The Hartford Paving and Construction Company was the contractor for the erection of a bridge, and engaged in its erection. The defendant took from this company a contract to furnish and set, for an agreed sum, certain cut stone specified for the construction of the bridge. The execution of this subcontract necessitated the use of hoist-ing devices, and it was stipulated in the contract, as one condition of it, that the defendant should have the use of the derricks then located at the work. One such derrick, operated by a hoisting engine, was in fact so used. Cav-anaugh, the plaintiff's intestate, was employed by the de-fendant as a mason's helper, and pursuant to this employ-ment he and a mason named Harper, a competent man, who acted as foreman, were sent by the defendant to set the stone in place. While Cavanaugh was employed in this work, and while this derrick, under the directions of Harper, was being used to lift a stone weighing about $5\frac{1}{2}$ tons into its place, one of its two guy-wire supports broke, and the derrick fell, hitting and killing Cavanaugh. The other pertinent facts are sufficiently stated in the opinion.

*Joseph P. Tuttle,* for the appellant (plaintiff).

*Robert C. Dickenson*, for the appellee (defendant).

PRENTICE, J. The defendant, having suffered a default, placed itself in a position where the plaintiff was entitled to a judgment for substantial damages, unless it succeeded in establishing by a preponderance of evidence, either that it was not negligent in the premises or that Cavanaugh, the plaintiff's intestate, was negligent in a manner directly contributing to the injury which befell him. The court has in express terms found the latter fact established. There is no express finding upon the former issue. Evidently the court deemed it unnecessary to determine that question, in view of its conclusions as to contributory negligence, and intended to rest its judgment for nominal damages upon that conclusion. We might, therefore, under ordinary circumstances, confine our inquiry to the questions of law which enter into the court's determination that there was contributory negligence. But the defendant urges upon us that, even if error should appear in this part of the case, the judgment would not be erroneous, and ought not to be set aside, since the facts of record disclose as a matter of law that there was no negligence on the defendant's part. Our views of the case subsequently outlined, therefore, require us to examine the facts of the case in their relation to both negligence and contributory negligence. It will be convenient to consider the defendant's claim last stated first in order.

This claim, as stated in the headlines of the brief of counsel, is that the finding imputes no negligence to the defendant. This would not be sufficient in view of the burden cast upon it by the default of disproving negligence. But it is apparent from the argument presented in elaboration of the proposition stated that its contention is the broader one, that the facts show affirmatively that the negligence which led to the fall of the derrick was that of the Hartford Paving and Construction Company and not that of the defendant. The court has found that Cavanaugh's death was caused by the negligent manner in which the

derrick had been erected and supported. The subordinate facts stated are ample to support this conclusion. We start, then, with the proposition that somebody's negligence was primarily responsible for his death, and it only remains to inquire whether or not it can be said as a matter of law upon the facts that that responsibility attaches or does not attach to the defendant.

· The record discloses that the defendant had contracted with said Construction Company, which was engaged in the erection of a bridge, to furnish and lay certain cut stone required in the work, and that by the terms of the contract the Construction Company was to furnish the necessary derrick and hoisting appliances for the setting of the stone. The correspondence which expresses the undertakings of the parties discloses that the Construction Company undertook to furnish the use of the derricks then in position and an engineer to operate them. When the time arrived for the stone to be set, the defendant sent one Harper, a competent and qualified mason, and Cavanaugh, employed by it as a helper, to do the work. Harper assumed charge and control of the work, and so far as the operation of the derrick which was made use of was required in the lifting of the stones into place he exercised control and direction of that. He gave the directions as to the raising, lowering, and operation of the derrick, and at the time of the injury to Cavanaugh its operation, in carrying a stone weighing more than five tons into position, was under his (Harper's) orders and direction.

Cavanaugh was the defendant's servant in the work in which he was engaged, and remained such until the blow of the falling derrick killed him. Being his master, the defendant owed him the duty to use reasonable care to provide him with a reasonably safe place in which to work and reasonably safe appliances and instrumentalities for his work. The complaint charges a failure in this duty in respect to both place and appliances. The charge, in so far as it relates to place, may be dismissed from our present consideration as quite superfluous. The defendant had a con-

tract to lay certain courses of heavy cut stone upon a
bridge in process of construction.   It sent its employee
Harper to supervise the execution of its contract, and Har-
per and Cavanaugh, also its employee, to do the manual
work connected with the setting of the stone.   The ser-
vice which the two men were thus deputed and directed to
perform necessarily involved the use of hoisting apparatus
for the handling of the stone.   It could be rendered only
in conjunction with and by the use of such apparatus.
The defendant undertook to provide the necessary appli-
ances.   The means resorted to was an arrangement with
the Construction Company, which had a derrick and hoist-
ing engine set and in operation at the bridge, by which
the use of this derrick and engine as wanted was obtained.
This derrick and its operation was thus supplied and used
by the defendant to co-operate with the services of the
two men.   It matters not that the derrick and engine may
have been manned, cared for, and operated by the servants
of the Construction Company, and that its foreman may
have supervised and directed its movements.   It matters
not that the men employed about the derrick and engine
may have looked to this foreman for their orders.   Whatever
may have been the situation in these respects, or in respect
to other matters of subordinate detail which the defendant
appears to regard as important, the controlling fact is to
be found elsewhere.   The defendant had chosen to provide
necessary apparatus to be used by Harper and Cavanaugh
in the execution of its work assigned to them through the
medium of this particular appliance.   Manned as it was,
operated as it was, and defective as it was, it thus became
the instrumentality put into their hands by the defendant
for their use in its service.   Thus provided, it was used
for the purposes for which it was provided, Harper being
made the defendant's representative to direct as to its use
and operation.   By the very necessities of the situation
created by the agreement which put the apparatus into the
defendant's service when required, and made it, when
requisitioned, an instrument in the execution of the work

intrusted to its agents to be performed by the aid of it, it was not only an instrumentality provided by the defendant, but also one which, in legal contemplation, passed under its authority and ultimate control. There can be no escape, therefore, for this defendant, from a master's responsibility to Cavanaugh as its servant in respect to the negligently defective appliance which caused his death. The conditions not embodied in the finding which the defendant claims to have established would not suffice to bring the situation within the principles of *Channon* v. *Sanford Co.*, 70 Conn. 573, 40 Atl. 462, upon which it relies.

The derrick was unfit for the use to which it was put in the execution of defendant's contract. Its defects are found to have arisen from the use in its support of only two $\frac{3}{4}$-inch guy-wires when four $\frac{7}{8}$-inch ones were demanded by ordinary prudence, and from the fact that the wire which broke was defective and broken and bent in its strands, some of which disclosed conditions of rust at the broken ends. The first of these conditions was necessarily obvious to any competent man. The last is found to have been observable from such inspection as reasonable prudence demanded. The defendant's duty to use reasonable care to provide reasonably safe appliances and instrumentalities involves the duty to exercise such care in the matter of inspection. *Rincicotti* v. *O'Brien Contracting Co.*, 77 Conn. 617, 620, 60 Atl. 115. The facts here presented conclusively show that there was either no inspection, or an utterly incompetent or inadequate one. The defendant claims that the evidence discloses an inspection by a representative of the defendant. It matters not whether that be true or not, save as it indicates the defendant's appreciation of its duty, since the failure to observe obvious defects, to say nothing of those less obvious, which were nevertheless discernable upon a reasonable examination, or to appreciate that ordinary prudence demanded conditions different from those which were thus apparent or discernable, establishes beyond cavil that reasonable care was not exercised in inspection, as a result of either the incompetency of the agent or the inadequacy

of his work.   The facts found are therefore such as to establish as a matter of inevitable conclusion that responsibility for the negligence which the court has found rests upon the defendant.

It remains to consider whether the conclusion of the trial court, that Cavanaugh was guilty of contributory negligence, is one which can meet the assault which the plaintiff makes upon it.   The finding clearly states that this conclusion was based solely upon the following facts, to wit :  That immediately before the derrick fell, and while a heavy stone was being lifted into position, Cavanaugh was standing near where the stone was to rest, holding on, with others, to the line which guided the movement of the stone into position ; that Harper then directed Cavanaugh to take a position beside him and not more than six feet from where Cavanaugh then was in order to assist in placing and setting the stone when it should be lowered ; that Cavanaugh refused to comply, and remained standing where he was, remarking " I don't want to get killed " ; that shortly after this reply the derrick fell ; that no duty incident to Cavanaugh's employment called for his presence at the place where he was standing ; and that, if he had moved as directed, he would not have been injured.   For these reasons the court says that the position in which Cavanaugh was at the time of the accident was not a proper place for him to occupy.   The court evidently entertained a misconception of the law, and reached its conclusions that Cavanaugh was negligent, and that that negligence was a proximate cause of his injury, upon false legal premises.

The position in which Cavanaugh continued to stand was not one which he had reason to regard as unsafe.   It does not appear that it was in fact unsafe above any other place where his duties called him, save as the derrick chanced to fall across the spot where he was.   It does not appear to have been in any respect unsafe except as the improper condition of the derrick rendered it so, and this fact he did not know, and had no occasion to guard against.   The direction given to him to change his position was not given

with respect to his safety. Its purpose was not to have him go from a place of supposed danger to one of supposed greater safety, but that his services might be better utilized in setting the stone. Negligence cannot, therefore, be imputed to him in respect to his act in remaining where he was. In thus remaining he cannot be said to have disregarded any dictate of ordinary prudence under the circumstances. He was disobedient to his superior, and perhaps wrongfully so. But disobedience is not tantamount to negligence. Disobedience of directions in respect of safety may amount to negligence. All disobedience does not. Neither can Cavanaugh's disobedient act in standing still under the circumstances, and thus being in a sense possibly, to borrow the language of the court, in an improper place, be regarded in the legal sense as a cause of the injury received. It was a condition rather. The various questions involved in this aspect of the case were before this court in *Smithwick* v. *Hall & Upson Co.*, 59 Conn. 261, 21 Atl. 924, and were there discussed at length, and the principles which conclusively determine that the court erred in its finding of contributory negligence laid down. These principles have received subsequent approval in *Gilmore* v. *American Tube & Stamping Co.*, 79 Conn. 498, 500, 66 Atl. 4, and in part in *McElligott* v. *Randolph*, 61 Conn. 157, 165, 22 Atl. 1094.

The defendant asks that certain additions be made to the finding, and to that end has caused the evidence to be certified to this court. The desired additions, if made, would not, in our view of the case as hereinbefore expressed, change the finding in any material matter. Its right to them need not, therefore, be considered.

There is error and a new trial is ordered.

In this opinion the other judges concurred.