ANGELO MORELLI *vs.* THE NOERA MANUFACTURING
COMPANY.

Third Judicial District, Bridgeport, October Term, 1908.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

An experienced workman operating a drop-press was repeatedly in-
structed as to its use and warned that he must not under any cir-
cumstances put his fingers or hand beneath the punch or hammer
when the power was on. These directions were simple and ade-
quate and a compliance therewith would have protected the work-
man against injury. He persistently disregarded them and in
consequence thereof was injured by the unexpected fall of the
hammer, due in part to a defect in the press. *Held* that he could
not escape the effect of his own contributory negligence, found by
the trial court, upon the theory that the instruction and warnings
given him had reference only to a fall of the hammer when the
machine was in perfect working order, and not to one which might
be caused by defects in the machine itself.

The case of *Gilmore* v. *American Tube & Stamping Co.*, 79 Conn. 498,
distinguished.

Submitted on briefs November 11th—decided December 18th, 1908.

ACTION to recover damages for personal injury alleged to
have been caused by the defendant's negligence, brought
to and heard in damages by the Superior Court in New
Haven County, *Shumway, J.;* facts found and judgment
rendered for nominal damages only, from which the plain-
tiff appealed. *No error.*

The plaintiff was employed by the defendant to operate
a drop-press. The operation of the press involved the in-
sertion of a metal shell upon a die, and the release, after
such insertion, of a punch or hammer, which fell with force
upon the shell thus placed upon the die. The plaintiff,
when employed by the defendant, had had long experience
in this class of work and in the use of the particular
make of press upon which he went to work for the defend-
ant, and he informed the defendant that he had had such

experience, was competent and skilful in that employment, and understood the function and operation of the press upon which he was set to work. The defendant's superintendent then, and frequently thereafter, instructed and directed him as to the manner in which he should hold the shell when he placed it upon the die, and particularly instructed and directed him never, under any circumstances, to put his finger or fingers on the top of the shell when placing it on the die, and never, under any circumstances, to put his finger, fingers or hand beneath the punch or hammer when the power was on, warning him that, if he disobeyed, he would be liable to have his hand cut off, as the punch might come down on his hand or fingers.

On the day of the injury to the plaintiff he was engaged in operating a press, and these instructions and orders were twice repeated to him on that day by the superintendent. Upon the last occasion the plaintiff had been observed by the superintendent to act in disobedience of his instructions and orders, and the latter then told him that if he was ever again seen to disobey he would be discharged on the spot. Shortly afterward the superintendent observed the plaintiff again placing his fingers on top of the shell when in the act of placing it upon the die, and thus putting his hand beneath the hammer. Instantly thereafter and before the superintendent could call out or act, the hammer suddenly came down and cut off the index finger of the plaintiff's right hand.

It is a peculiarity of presses of this type, even when in perfect order, that an unexpected descent of the hammer is liable to occur at any time when the power is on, without any act of the operator setting it in motion. This may result from different causes.

The instructions and directions of the defendant to the plaintiff were reasonable and proper ones, and if they had been obeyed by the plaintiff he could not, under any circumstances, have been injured by the fall of the hammer.

The press at the time of the accident was out of order, in that a set-screw whose function was to hold in place a set-pin, which in turn controlled the action of the hammer, was missing, and the pin was jarred out upon the floor. The fall of the hammer was due in part to the absence of this pin. An inspection of the press would have disclosed that the screw was missing. Such an inspection was not made. Whether the defendant was negligent in this regard is not found, since the question of the defendant's negligence was not passed upon by the court. The plaintiff was found guilty of contributory negligence, and the judgment for nominal damages rendered in consequence.

*Francis P. Guilfoile*, for the appellant (plaintiff).

*Wilson H. Pierce*, for the appellee (defendant).

PRENTICE, J. The plaintiff persistently and wilfully disregarded the warnings and disobeyed the reasonable and proper instructions and directions repeatedly and emphatically given to him by the defendant's superintendent with respect to his safety, in view of the particular source of danger, specifically pointed out to him, which occasioned his injury. His disobedience thus deliberately persisted in exposed him to his injury, which otherwise would not have befallen him. Under such conditions it cannot be said that the court below was not justified in finding, as it did, that he was guilty of negligence, and that this negligence directly contributed to produce his injury. *Hyde* v. *Mendel*, 75 Conn. 140, 144, 52 Atl. 744; *Cavanaugh* v. *Windsor Cut Stone Corporation*, 80 Conn. 585, 592, 69 Atl. 345; *Smithwick* v. *Hall & Upson Co.*, 59 Conn. 261, 268, 21 Atl. 924.

The plaintiff, however, insists that this is not a correct synopsis of the situation, and that by his disobedience he assumed no other risks than those which were incident to the fall of the hammer when the machine was in perfect

working order, and did not assume those which would attend its fall from the defective condition of the machine. The distinction thus attempted to be drawn necessarily rests upon the assumption that the warnings, instructions and directions given the plaintiff were intended for his protection against a danger arising in the first named way and not against one arising in the second way. *Smithwick* v. *Hall & Upson Co.*, 59 Conn. 261, 268, 21 Atl. 924; *Gilmore* v. *American T. & S. Co.*, 79 Conn. 498, 506, 66 Atl. 4. There is no basis for this assumption. The danger which threatened was one which would result to the operator from the unexpected fall of the hammer. Whether the ultimate cause of this fall was the inadvertent action of the operator, some feature of the machine in order, some defect in it, or some cause from without, the resultant phenomenon was the same, and its dangers the same. In each situation the hammer would unexpectedly fall, endangering what might chance in its way. It was the untimely hammer fall whose consequences were to be feared, and it is inconceivable that when the defendant, recognizing this danger, sought to secure the safety of its employees, and incidentally its own protection, by warnings, instructions and directions adequate to that end, they were given in view of anything less than the apparent source of danger and were not intended as a warning and protection against all danger from that source without differentiation or distinction. The danger was from a single, immediate source, presenting a uniform outward aspect whatever the ultimate cause; it was a danger easy to see and appreciate; it was one which could under all circumstances be avoided by simple means; the defendant prescribed these means to its employees, including this plaintiff; it is only by a refinement of reasoning that it could be said upon the facts found that these means were designed to meet a situation less comprehensive than the single, apparent source of the common danger.

The plaintiff relies upon the two cases last cited. The

first one presents few analogies to the present. The second possesses a greater similarity in its facts. In that case, however, the trial court had found the plaintiff free from contributory negligence, and the question presented was whether this conclusion was without justification as a matter of necessary inference from the subordinate facts found. It was held that there was no such necessary inference, since it was evidently the ordinary and obvious danger arising from the inadvertent act of the operator and not the danger resulting from the broken belt against which, in that case, the warning was intended to be given.

There is no error.

In this opinion the other judges concurred.